1  JOSEPH W. COTCHETT (SBN 36324)
   jcotchett@cpmlegal.com
2  NIALL P. MCCARTHY (SBN 160175)
   nmccarthy@cpmlegal.com
3  ANNE MARIE MURPHY (SBN 202540)
   amurphy@cpmlegal.com
4  **COTCHETT, PITRE & McCARTHY**
   840 Malcolm Road, Suite 200
5  Burlingame, California 94010
   Telephone:  (650) 697-6000
6  Facsimile:   (650) 692-3606

7  DAVID J. VENDLER (SBN 146528)
   dvendler@mpplaw.com
8  **MORRIS, POLICH & PURDY, LLP**
   1055 West Seventh Street, 24th Floor
9  Los Angeles, CA 90017
   Telephone:  (213) 891-9100
10 Facsimile:   (213) 488-1178

11 [Additional Counsel on Signature Page]

12 *Attorneys for Plaintiffs*

13              **[UNITED STATES DISTRICT COURT**

14              **CENTRAL DISTRICT OF CALIFORNIA**

15

16 JANICE J. ABAT; ILDIKO NYLEN;          Case No. SACV07-1476-CJC (CTx)
   JEANNE ROSSEAN; LINDA
17 SHAKESPEARE; SHANNON                   **NOTICE OF MOTION AND**
   CARREIRO; NANCY WILKSEN;               **MEMORANDUM OF POINTS**
18 ERICA HALL; on behalf of themselves    **AND AUTHORITIES IN**
   and all other persons similarly situated, **SUPPORT OF MOTION FOR**
19                                          **PRELIMINARY APPROVAL**
                Plaintiffs,                **OF PARTIAL SETTLEMENT**
20                                          **OF CLASS CLAIMS WITH**
        vs.                                **THE MMI DEFENDANTS,**
21                                          **CONDITIONAL CLASS**
   CHASE BANK USA, N.A.; MONEY            **CERTIFICATION FOR**
22 MANAGEMENT INTERNATIONAL,             **PARTIAL SETTLEMENT,**
   INC.; MONEY MANAGEMENT BY             **AND APPROVAL OF CLASS**
23 MAIL, INC.; and MONEY                 **NOTICE**
   MANAGEMENT INTERNATIONAL
24 FINANCIAL EDUCATION
   FOUNDATION,                           Date:    November 8, 2010
25                                        Time:    1:30 P.M.
                Defendants.              Place:   9B, Santa Ana
26                                        Judge:   Hon. Cormac J. Carney

27

28

MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS WITH THE
MMI DEFENDANTS, CONDITIONAL CLASS CERTIFICATION FOR PARTIAL SETTLEMENT, AND
APPROVAL OF CLASS NOTICE; CASE NO. SACV07-1476-CJC (CTx)

# **TABLE OF CONTENTS**

**NOTICE OF MOTION AND MOTION** .......................................................... v

**MEMORANDUM OF POINTS AND AUTHORITIES** ...................................... 1

**I.    INTRODUCTION AND SUMMARY** .......................................... 1

**II.   PROCEDURAL HISTORY** ....................................................... 1

    A.   Summary of the Case ........................................................ 1

    B.   Parties' Exchange of Information ......................................... 3

    C.   Mediation and Negotiations ............................................. 3

**III.  KEY SETTLEMENT TERMS AND PROVISIONS FOR CLASS
NOTICE** ................................................................................. 3

    A.   The Settlement Fund ......................................................... 4

    B.   Notice Provisions ............................................................. 6

**IV.   THE PROPOSED SETTLEMENT CLASS SHOULD BE
CERTIFIED** ........................................................................... 7

    A.   The Numerosity Requirement is Satisfied .......................... 8

    B.   The Commonality Requirement is Satisfied ........................ 8

    C.   The Typicality Requirement is Satisfied ............................. 9

    D.   The Adequacy Requirement is Satisfied ........................... 10

    E.   The Proposed Settlement Class Meets the Requirements of Rule
23(b)(3) ........................................................................ 11

        1.   Common Questions of Law and Fact Predominate ................. 12

        2.   Class Treatment is Superior ....................................... 13

**V.    THE COURT SHOULD PRELIMINARILY APPROVE THE
PROPOSED SETTLEMENT** ................................................... 14

    A.   The Circumstances Surrounding Negotiations and the Experience
of Counsel ..................................................................... 17

    B.   The Settlement Provides a Significant Benefit to the Class in Light
of the Risks and Costs of Continued Litigation ................. 18

**VI.   THE PROPOSED FORM AND MANNER OF PROVIDING
NOTICE TO THE CLASS COMPORT WITH RULE 23 AND
DUE PROCESS CRITERIA** .................................................... 18

VII.  **THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING AND DEADLINES FOR ELIGIBLE CLASS MEMBERS TO OPT IN AND OPT OUT OF THE SETTLEMENT AND FOR ANY OBJECTIONS** ................................................................................... 19

VIII. **CONCLUSION** ............................................................................................ 20

# TABLE OF AUTHORITIES

## Cases

*Acosta v. Trans Union, LLC*, 243 F.R.D. 383 (C.D. Cal. 2007)................................ 7

*Alberto v. GMRI, Inc.*, 252 F.R.D. 652 (E.D. Cal. 2008) ........................................ 15

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ...................................... passim

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975)..................................................... 13

*Celano v. Marriot Int'l, Inc.*, 242 F.R.D. 544 (N.D. Cal. 2007)........................ 15, 16

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ........................... 15

*Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168 (9th Cir. 2007)........................................... 9

*EEOC v. Printing Indus., Inc.*, 92 F.R.D. 51 (D.D.C. 1981) ..................................... 8

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)........................................... 7, 18

*Fischer v. Kletz*, 41 F.R.D. 377 (9th Cir. 1966)....................................................... 13

*Gunnells v. Healthplan Services*, 348 F.3d 417 (4th Cir. 2003).............................. 12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ....................... 7, 9, 10, 16

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964)............ 13

*In re Aremis Soft Corp. Sec. Litig.*, 210 F.R.D. 109 (D.N.J. 2002) ......................... 18

*In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359 (N.D. Ohio 2001)....... 16

*In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74 (D. Md. 1991) .................... 8

*In re Paxil Litigation*, 212 F.R.D 539 (C.D. Cal. 2003) .......................................... 10

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007)......... 15, 16

*In re United Energy Corp. Solar Power Modules Tax Shelter Investors Securities Litigation,*   122 F.R.D. 251 (C.D. Cal. 1988)..................................................... 10

*Kristianson v. John Mullins & Sons, Inc.*, 59 F.R.D. 99, 106 (E.D.N.Y. 1973)...... 12

*Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*   244 F.3d 1152 (9th Cir. 2001)................................................................ 14

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997) .................................. 14

*Miller v. Mackey Int'l*, 452 F.2d 424 (5th Cir. 1971) ................................................ 7

*Misra v. Decision One Mortgage Company and HSBC Finance Company*, 2009 U.S. Dist.   LEXIS 119468 at *8-9 (C.D. Cal. April 13, 2009) ........................... 17

*Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475 (9th Cir. 1983).......................... 16

*Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468 (E.D. Cal. 2010)........................ 15

*Pilkington v. Cardinal Health, Inc. (In re Syncor ERISA Litig.)*, 516 F.3d 1095 (9th Cir. 2008).................................................................................................... 15

*Polacsek v. Debticated Consumer Counseling*, 413 F. Supp 2d 539 (D. Md. 2005) ............................................................................................................................. 11

*Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108 (S.D.N.Y. 1999)................ 17

*S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335 (D.S.C. 1991) ........................................ 16

*Slaven v. BP America, Inc.*, 190 F.R.D. 649 (C.D. Cal. 2000) ................................... 8

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) .............................. 15

*Wang v. Chinese Daily News*, 231 F.R.D. 602 (C.D. Cal. 2005) ............................ 12

*Zimmerman v. Cambridge Credit Counseling Corp.*, 409 F.3d 473 (1st Cir. 2005)11

*Zimmerman v. Cambridge Credit Counseling Corp.*, 409 F.3d 473(1st Cir. 2005), remanded to 529 F. Supp, 2d 254 (D. Mass. 2008).............................................. 11

**Statutes**

15 U.S.C. § 1679, et. seq. .......................................................................................... 2

**Rules**

Fed. R. Civ. P. 16(a)(5) ............................................................................................ 15

Fed. R. Civ. P. 23 et seq. .................................................................................. passim

United States District Court, Central District of California, L.R. 16-15 to 15.9 ..... 15

United States District Court, Central District of California, L.R. 16-2.9 ................ 15

**Other Authorities**

Advisory Committee's Notes on Fed. Rules Civ. Proc. 23, 28 U.S.C. App., pp. 696-697 [sic]) ........................................................................................................... 11

Newberg on Class Actions, §11:53, at 167 (4th Ed. 2002)....................................... 19

## NOTICE OF MOTION AND MOTION

**TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 8, 2010 at 1:30 pm or as soon thereafter as the matter may be heard before Honorable Cormac J. Carney in Courtroom 9B of the United States District Court, Central District of California, located at 411 West Fourth Street, Santa Ana, CA 92701, Plaintiffs Janice J. Abat, Jeanne Rossean, Nancy Wilksen and Erica Hall (collectively, the "MMI Named Plaintiffs" or "MMI Class Representatives"), individually and as class representatives, will and hereby do move the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for an Order: (1) granting conditional certification of the class for partial settlement purposes only; (2) granting preliminary approval of the proposed partial settlement memorialized in the Stipulation filed herewith, including a proposed draft of the Class Notice and Exclusion Form; (3) authorizing the proposed form of notices and mechanism for providing notice to the Settlement Class; (4) preliminarily approving the MMI Class Representatives' attorneys as Class Counsel; (5) preliminarily appointing the MMI Named Plaintiffs as Class Representatives and (6) setting a hearing date on final approval of the Stipulation of the Settlement.

This motion is made on the grounds that: (1) all requirements for certification of a class action solely for settlement purposes are met; (2) the partial settlement is in the best interest of Class Members; (3) the proposed Class Notice would fairly apprise Class Members of the terms of the Settlement; (4) the MMI Class Representatives' attorneys are experienced in complex litigation and have zealously and adequately represented the interests of Class Members and (5) the proposed time table for mailing the Class Notice, lodging objections to the terms of the settlement and the plan of allocation, filing exclusion forms, and holding a hearing regarding final approval of the Settlement are appropriate.

1  Attached to the Declaration of Niall P. McCarthy submitted herewith, are the

2  following exhibits:

3  Exhibit A - Stipulation of Settlement and Settlement

4  Agreement with the MMI Defendants.

5  This motion is based on this Notice of Motion and Memorandum of Points

6  and Authorities, the Declaration of Niall P. McCarthy, the complete files and

7  records in this action, and any oral argument allowed by the Court. A proposed

8  form of Order is submitted herewith.

9  Dated: September 30, 2010                    Respectfully submitted,

10                                  By        _/s/ Niall P. McCarthy_

11                                             NIALL P. MCCARTHY
                                               ANNE MARIE MURPHY
12                                             **COTCHETT, PITRE & McCARTHY**
                                               840 Malcolm Road, Suite 200
13                                             Burlingame, California 94010
                                               Telephone: (650) 697-6000
14                                             Facsimile:   (650) 692-3606

15                                             DAVID J. VENDLER, ESQ.
                                               **MORRIS, POLICH & PURDY, LLP**
16                                             1055 West Seventh Street, 24th Floor
                                               Los Angeles, CA 90017
17                                             Telephone: (213) 891-9100
                                               Facsimile:   (213) 488-1178
18
                                               GREGORY S. DUNCAN, ESQ.
19                                             **LAW OFFICES OF GREGORY S.**
                                               **DUNCAN**
20                                             412 East Jefferson Street
                                               Charlottesville, VA 22902
21                                             Telephone: (434) 979-8556
                                               Facsimile:   (434) 979-9766
22
                                               GARRETT M. SMITH, ESQ.
23                                             GARY W. KENDALL, ESQ.
                                               **MICHIE HAMLETT LOWRY**
24                                             **RASMUSSEN & TWEEL PLLC**
                                               500 Court Square, Suite 300
25                                             Charlottesville, VA 22902
                                               Telephone: (434) 951-7200
26                                             Facsimile:   (434) 951-7218

27                                             *Attorneys for Plaintiffs*

28

MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS WITH THE
MMI DEFENDANTS, CONDITIONAL CLASS CERTIFICATION FOR PARTIAL SETTLEMENT, AND
APPROVAL OF CLASS NOTICE; CASE NO. SACV07-1476-CJC (CTx)                           v

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY

The MMI Named Plaintiffs[1] submit for the Court's preliminary approval a proposed partial settlement of class claims. The proposed settlement is designed to benefit a class comprised of consumers who made payments to the MMI Defendants for credit counseling services, including specifically Debt Management Plans ("DMPs"). This agreement is the product of lengthy negotiations over the course of nearly two and a half years, including two formal mediation sessions before experienced mediator the Honorable Edward A. Infante (Ret.) of JAMS, substantial information exchange, and close analysis of the strengths and weaknesses of the opposing side's arguments as well as the financial ability of the MMI Defendants to satisfy a large judgment. Careful consideration has led the MMI Named Plaintiffs and their counsel to conclude that the proposed settlement is in the best interests of the Settling Parties so as to avoid the time, expense, and uncertainty of further litigation. The proposed class certification is conditional and for settlement purposes only.

Based on these considerations, the MMI Named Plaintiffs respectfully submit that it is appropriate to grant preliminary approval of the proposed partial settlement, conditionally certify the proposed Settlement Class for purposes of settlement, approve the proposed form of notices and mechanism for providing notice to the Settlement Class, and set a hearing date on final approval of the Stipulation of Settlement.

## II.    PROCEDURAL HISTORY

### A.    Summary of the Case

Defendant Money Management by Mail, Inc. ("MMBM") was a corporation organized in 1997 under the laws of the state of Virginia as a non-stock corporation.

---

[1]    Plaintiffs Janice J. Abat, Jeanne Rossean, Nancy Wilksen and Erica Hall.

1  Defendant Money Management International, Inc. is a corporation organized under
2  the laws of the state of Texas as a tax-exempt and non-profit corporation. At some
3  point in time, MMBM merged into Money Management International, Inc. to form
4  one of the largest credit counseling agencies in the country, offering debt
5  management services to facilitate collections for the nation's leading lenders.

6  This class action was brought by the MMI Named Plaintiffs, debt
7  management plan consumers who paid money in fees or "voluntary contributions"
8  to the MMI Defendants, on behalf of themselves and others similarly situated. On
9  December 28, 2007, MMI Named Plaintiffs filed a complaint, individually and on
10  behalf of the purported class, against JP Morgan Chase & Company and Chase
11  Manhattan Bank U.S.A. (collectively "Chase Defendants") and Money
12  Management International, Inc., Money Management by Mail and Money
13  Management International Educational Foundation (collectively "MMI
14  Defendants") in the United States District Court, Central District of California as
15  Civil Action No. 8:07 cv 1476 CJC (CTx). The Named Plaintiffs filed a First
16  Amended Complaint on June 18, 2008, and a Second Amended Complaint on
17  August 21, 2009. The operative complaint in this action is the Second Amended
18  Complaint ("Complaint"). Plaintiffs allege that the MMI Defendants charged them
19  fees in violation of several provisions of the Credit Repair Organizations Act
20  ("CROA") (15 U.S.C. § 1679, et. seq.) and that they made fraudulent
21  representations in connection with the sale of their services, including that they
22  were non-profits and that they would "negotiate" with creditors for the consumers'
23  benefit. Plaintiffs also allege that the MMI Defendants' business practices violated
24  the Fair Debt Collection Practices Act ("FDCPA") and various state laws, including
25  California's Consumers' Legal Remedies Act and Unfair Competition Law, as well
26  as common law breach of fiduciary duty.

27  Based on these allegations, the Second Amended Complaint states a total of
28  ten causes of actions against the MMI Defendants for their conduct in marketing,

1  administering and/or providing DMPs to Class Members (the "MMI Litigation").

2  The MMI Defendants deny all of Plaintiffs' claims as to liability, damages,

3  penalties, interest, fees, restitution and all other forms of relief as well as the class

4  allegations asserted in the MMI Litigation.

5  **B.   Parties' Exchange of Information**

6  This action has been vigorously litigated for two and one half years, and has

7  been subject to motions to dismiss, motions to transfer venue, motions for

8  protective orders and to extensive discovery in the form of interrogatories,

9  document productions, depositions, and related motions to compel.  Document

10 discovery from the Chase Defendants, the MMI Defendants and third party files has

11 collectively included over 125,000 pages of material.  Eleven depositions have been

12 taken in this matter.

13 **C.   Mediation and Negotiations**

14 In February 2008, the parties first discussed settlement, and over the

15 subsequent course of nearly two and a half years, the Settling Parties have engaged

16 in extensive settlement-oriented information sharing and communications.  The

17 Settling Parties recently participated in two formal mediation sessions before the

18 Honorable Edward A. Infante (Ret.) of JAMS.  The first mediation session was held

19 on May 6, 2010 and the second mediation session on June 10, 2010, both in San

20 Francisco.  At all times, the settlement negotiations have been adversarial, non-

21 collusive, and at arm's length.  The mediations and extended negotiations produced

22 a settlement in principle that formed the basis for the Settlement Agreement.

23 **III.   KEY SETTLEMENT TERMS AND PROVISIONS FOR CLASS**

24 **NOTICE**

25 The details of the Settlement are contained in the Settlement Agreement

26 signed by the participating parties, a copy of which is attached as Exhibit A to the

27 Declaration of Niall P. McCarthy ("McCarthy Dec.").  For purposes of preliminary

28 approval, the following summarizes the Settlement Agreement and its key terms.

MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS WITH THE
MMI DEFENDANTS, CONDITIONAL CLASS CERTIFICATION FOR PARTIAL SETTLEMENT, AND
APPROVAL OF CLASS NOTICE; CASE NO. SACV07-1476-CJC (CTx)                                  3

1

## A. The Settlement Fund

2      The MMI Defendants will pay $6.5 million in full settlement of the claims
3  alleged against them. The MMI Defendants will pay this amount in two equal
4  installments – one no later than thirty (30) days following the Notice Approval
5  Date, and the remainder within 15 days of the Final Approval of this Agreement.

6      Once the MMI Defendants have made both payments into the Settlement
7  Escrow Account, the Settlement Administrator will disburse the Settlement Escrow
8  Fund to former MMI customers who are Participating Claimants under the terms of
9  this Agreement. Interest will accrue in the Settlement Escrow Account for the
10 benefit of the members of the Settlement Class. In addition to the $6,500,000, the
11 costs of class notice and administration will be paid solely by the MMI Defendants.
12 The $6.5 million Gross Settlement Amount will be used to pay the following:
13 attorneys' fees, litigation costs, and enhancement payments to Class
14 Representatives of $5,000 each (for a total of $20,000).

15     The "Net Settlement Amount" will consist of the $6.5 million Gross
16 Settlement Amount, plus post-Judgment interest minus the sum of the amounts
17 attributable to attorneys' fees to Class Counsel, costs of Class Counsel, and MMI
18 Class Representative enhancement payments. The Net Settlement Amount will be
19 paid by MMI to each MMI Class Representative and all Class Members who do not
20 submit Qualifying Exclusion forms (the "Settlement Class"). Any individual who
21 does not receive a Class Notice or does not timely receive a Class Notice but who
22 claims that he or she should be a Class Member, must present evidence and
23 information demonstrating that he or she should be included in the settlement.

24     Plaintiffs' Counsel will not seek attorneys' fees in an amount greater than
25 25% of the Gross Settlement Amount (equal to $1,625,000), and the MMI
26 Defendants will not oppose this request for fees. The attorneys' fees, litigation
27 costs, and enhancement payments are all, as in all class actions, subject to Court

28

MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS WITH THE
MMI DEFENDANTS, CONDITIONAL CLASS CERTIFICATION FOR PARTIAL SETTLEMENT, AND
APPROVAL OF CLASS NOTICE; CASE NO. SACV07-1476-CJC (CTx)                          4

1 approval.  The settlement is not contingent upon the Court awarding specific
2 amounts for these items.

3      The class period for the settlement extends from December 28, 2002, through
4 the date on which preliminary approval is given for this Agreement.

5      The Net Settlement Amount will be distributed to Class Members in
6 proportion to the amount of fees paid by the Class Members to the MMI
7 Defendants.  However, no Participating Claimant will be entitled to receive more
8 than $500.00 reimbursement from the Net Settlement Amount with the exception of
9 the Class Representatives who receive enhancement payments.  The Claims
10 Administrator will determine each Participating Claimant's share of the Net
11 Settlement Amount based on the Class Member Information supplied by the MMI
12 Defendants.  Specifically, the MMI Defendants will provide the total amount (in
13 dollars and cents) paid by each Class Member in set-up fees and monthly fees to the
14 MMI Defendants during the Class Period less any refunds and/or return of any
15 amounts paid by each MMI Class Member (the "MMI Payment Amount").  If
16 either the initial fee amount or the total monthly fees amount of the MMI Payment
17 Amount for an individual class member does not exist in MMI's records, then the
18 Claims Administrator will attempt to derive the payment information by (1)
19 reviewing the class member's contract and the number of months the DMP was
20 active, and if unsuccessful, then by (2) applying the average of existing records for
21 of all MMI Class members for the missing payment information.  The Claims
22 Administrator will then calculate the sum of all MMI Payment Amounts for all
23 Participating Claimants (the "Aggregate Claim Amount").  Finally, the Claims
24 Administrator will divide the Net Settlement Amount for each Participating
25 Claimant by the Aggregate Claim Amount to determine the percentage of the MMI
26 Payment Amount that will be reimbursed to each MMI Settlement Class Member
27 (the "Pro Rata Share Calculation").

28

1        Any checks that remain uncashed more than 180 days after mailing will not
2  revert to the MMI Defendants, but will instead be subject to redistribution to the
3  class, and cy pres distribution as described in this Section.  In the event that funds
4  remain due to uncashed checks, and the Class Administrator determines that the
5  cost of further pro rata distributions will waste more than half of the remaining
6  funds, then the relevant sums will be distributed by the Claims Administrator to one
7  or more qualified 501(c)(3) charities jointly chosen by MMI Defendants and
8  Settlement Class Counsel and approved by the Court in accordance with 9th Circuit
9  standards.

10      **B.**    **Notice Provisions**

11        The parties have agreed to a notice process that incorporates diligent efforts
12  to notify class members of this settlement.  The MMI Defendants will pay all costs
13  of notice and administration in addition to the cash benefits that Defendants are
14  required to offer under this Settlement.

15        Class Members who are MMI customers at the time notice is disseminated
16  will receive notice through inserts in regular monthly billing statements or similar
17  recurring communications, and at MMI's option may also receive notice through
18  visits to the consumer's on-line account information.  Notice will also be sent via
19  an electronic mailing to any e-mail address possessed by MMI.  Class Members
20  who are not MMI DMP customers at the time notice is disseminated will receive
21  notice through a separate mailing to their Last Known Address and an electronic
22  mailing to any email address possessed by MMI.

23        In the event that subsequent to the first mailing of a Class Notice and prior to
24  the Notice Response Deadline, the United States Postal Service returns that Class
25  Notice to the Claims Administrator with a forwarding address for the recipient, the
26  Claims Administrator will re-mail the Class Notice to that address, the Class Notice
27  will be deemed mailed at that point, and the forwarding address will be deemed the
28  Updated Address for that Class Member.  In the event that subsequent to the first

1  mailing of a Class Notice, and at least ten (10) business days prior to the Notice

2  Response Date, the United States Postal Service returns that Class Notice to the

3  Claims Administrator because the address of the recipient is no longer valid, the

4  Claims Administrator will perform a standard skip trace in an effort to ascertain the

5  current address of the particular Class Member in question and, if such an address is

6  ascertained, the Claims Administrator will promptly re-send the Class Notice.

7  **IV.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED**

8         Prior to granting preliminary approval of a settlement, the court should

9  determine that the proposed settlement class is a proper class for settlement

10  purposes. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (courts

11  should pay heightened, undiluted attention to whether settlement class is

12  unrepresentative or overbroad). It has long been recognized in this Circuit that

13  class actions may be certified for the purpose of settlement. *See, e.g., Hanlon v.*

14  *Chrysler Corp.*, 150 F.3d 1011, 1019-1020 (9th Cir. 1998) (upholding certification

15  of the settlement class); *Acosta v. Trans Union, LLC*, 243 F.R.D. 383-84 (C.D. Cal.

16  2007) (discussing requirements of conditional class certification for settlement

17  purposes). At this stage, a court does not delve into the merits of the plaintiff's

18  claim: "'In determining the propriety of a class action, the question is not whether

19  the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits,

20  but rather whether the requirements of Rule 23 are met.'" *Eisen v. Carlisle &*

21  *Jacquelin*, 417 U.S. 156, 178 (1974) (quoting *Miller v. Mackey Int'l*, 452 F.2d 424,

22  428 (5th Cir. 1971)).

23         A court may certify a class when the plaintiff demonstrates that the proposed

24  class and class representatives meet Rule 23(a)'s prerequisites: (1) numerosity; (2)

25  common questions of fact or law; (3) the claims or defense of the representative

26  parties are typical of the class; and (4) the representative parties will fairly and

27  adequately protect the interests of the class. Fed. R. Civ. P. 23(a). After meeting

28  these strictures, the class must satisfy one of the three subsections of Rule 23(b).

1 | *See* Fed. R. Civ. P. 23(b).  The Named MMI Plaintiffs and their Counsel
2 | respectfully submit that the Settlement Class satisfies each of the requirements of
3 | Rule 23(a), and that the Settlement Class shares common questions of law and fact
4 | in accordance with Rule 23(b)(3).

5 | **A.    The Numerosity Requirement is Satisfied**

6 | Rule 23(a)(1) requires that the class be "so numerous that joinder of all class
7 | members is impracticable."  *See* Fed R. Civ. P. 23 (a)(1).  "Impracticability is not
8 | measured strictly by number, although numbers are important; rather,
9 | impracticability depends on the facts of each case."  *Slaven v. BP America, Inc.*,
10 | 190 F.R.D. 649,654 (C.D. Cal. 2000).  "The Ninth Circuit has not offered a precise
11 | numerical standard; other District Courts have, however, enacted presumptions that
12 | the numerosity requirement is satisfied by a showing of 25-30 members."  *Id.*
13 | (referencing *In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 78 (D. Md.
14 | 1991) ("While impracticability is not determined by a numerical test alone, a class
15 | of as few as 25 to 30 members raises the presumption that joinder would be
16 | impracticable."); *EEOC v. Printing Indus., Inc.*, 92 F.R.D. 51, 53 (D.D.C. 1981)
17 | (noting "that as few as 25-30 class members should raise a presumption that joinder
18 | would be impracticable, and thus the class should be certified")).  In this case, the
19 | Settlement Class is estimated to number in the hundreds of thousands and to be
20 | geographically dispersed throughout the United States, making joinder
21 | impracticable by any reasonable measure.

22 | **B.    The Commonality Requirement is Satisfied**

23 | Rule 23(a)(2) is satisfied where the proposed class representatives share at
24 | least one question of fact or law with the claims of the prospective class.  *See* Fed
25 | R. Civ. P. 23(a)(2).  "Rule 23(a)(2) has been construed permissively. All questions
26 | of fact and law need not be common to satisfy the rule.  The existence of shared
27 | legal issues with divergent factual predicates is sufficient, as is a common core of
28 | salient facts coupled with disparate legal remedies within the class."  *Dukes v. Wal-*

*Mart, Inc.*, 509 F.3d 1168, 1177 (9th Cir. 2007) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).  As MMI DMP consumers, all class members were allegedly victimized by the MMI Defendants' allegedly uniform misrepresentations and fee demands.  This shared status produces common factual and legal issues, including, but not limited to:

    a)    Whether the MMI Defendants engaged in conduct in violation of the Credit Repair Organizations Act when they collected fees from customers, made certain representations, and failed to disclose pertinent information in connection with the sale of credit repair services.

    b)    Whether the MMI Defendants breached a fiduciary duty to act in good faith for the benefit of consumers.

    c)    Whether the MMI Defendants engaged in conduct in violation of the Fair Debt Collection Practices Act by holding themselves out as a 501(c)(3) nonprofit.

    d)    Whether the MMI Defendants engaged in unfair, deceptive, misleading and/or unlawful conduct in violation of the California Consumer Legal Remedies Act.

    e)    Whether the MMI Defendants' licensing and business practices violated California's Unfair Competition Law.

    f)    Whether MMI Named Plaintiffs and the class members have sustained damages, and the proper measure of damages.

Accordingly, the commonality requirement of Rule 23(a)(2) is satisfied.

**C.**    **The Typicality Requirement is Satisfied**

Rule 23(a)(3)'s typicality requirement demands that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed R. Civ. P. 23(a)(3).  "'[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially

1  identical.'" *In re Paxil Litigation*, 212 F.R.D 539, 549 (C.D. Cal. 2003) (quoting

2  *Hanlon*, 150 F.3d at 1020). "The class representative must be able to pursue his or

3  her claims under the same legal or remedial theories as the represented class

4  members." *In re Paxil Litigation*, 212 F.R.D. 539 at 549. It is alleged that the

5  MMI Representative Plaintiffs and each proposed class member were subjected to

6  the MMI Defendants' identical conduct in a nearly identical manner. The Named

7  Representative Plaintiffs, like the proposed Settlement Class members, were or are

8  MMI DMP customers who solicited credit counseling services to their detriment.

9  Furthermore, the MMI Named Plaintiffs' evidence would serve to prove the

10 Settlement Class's claims. As such, MMI Representative Plaintiffs' claims are

11 typical of those of the proposed class.

12        **D.     The Adequacy Requirement is Satisfied**

13        The Class Representative Plaintiffs must satisfy Rule 23(a)(4)'s adequacy

14 requirement by showing that they will fairly and adequately protect the interests of

15 the Settlement Class. *See* Fed R. Civ. P. 23(a)(4). The adequacy requirement has

16 two prongs: "(1) That the representative parties' attorney be qualified, experienced,

17 and generally able to conduct the litigation; and (2) that the suit not be collusive and

18 plaintiff's interests not be antagonistic to the class." *In re United Energy Corp.*

19 *Solar Power Modules Tax Shelter Investors Securities Litigation*, 122 F.R.D. 251,

20 257 (C.D. Cal. 1988). As discussed, MMI Representative Plaintiffs have the same

21 interests as the proposed class—all have been allegedly harmed by the MMI

22 Defendants' business practices. The Settlement Class Representatives have

23 actively monitored the progress of this litigation to see that their injuries, as shared

24 with the proposed Settlement Class, are sufficiently remedied. Therefore, MMI

25 Class Representatives have no interests antagonistic to the proposed Settlement

26 Class. Furthermore, the Settlement Class Representatives have retained

27 experienced counsel. The significant settlement obtained for the Settlement Class

28 is concrete evidence that the MMI Representative Plaintiffs and their counsel have

1  been acting vigorously to fairly and adequately represent the Settlement Class's

2  interests as a whole. *See* McCarthy Dec., ¶ 8. In addition to their extensive general

3  litigation experience, Class Counsel have taken a leading role nationally in

4  litigating claims arising under the Credit Repair Organizations Act. *See, e.g.,*

5  *Zimmerman v. Cambridge Credit Counseling Corp.*, 409 F.3d 473 (1st Cir. 2005);

6  *Zimmerman v. Cambridge Credit Counseling Corp.*, 409 F.3d 473(1st Cir. 2005),

7  remanded to 529 F. Supp, 2d 254 (D. Mass. 2008); *Polacsek v. Debticated*

8  *Consumer Counseling*, 413 F. Supp 2d 539 (D. Md. 2005).

9      The MMI Representative Plaintiffs and their counsel thus meet the adequacy

10  requirement, without dispute. Accordingly, the Court should preliminarily approve

11  the MMI Class Representatives' attorneys as Class Counsel, and preliminarily

12  appoint the MMI Named Plaintiffs as Class Representatives.

13      **E.    The Proposed Settlement Class Meets the Requirements of Rule**

14          **23(b)(3)**

15      "To qualify for certification under Rule 23(b)(3), a class must meet two

16  requirements beyond the Rule 23(a) prerequisites: "Common questions must

17  'predominate over any questions affecting only individual members'; and class

18  resolution must be 'superior to other available methods for the fair and efficient

19  adjudication of the controversy.'" *Amchem*, 521 U.S. at 615 (quoting Fed. R. Civ.

20  P. 23(b)(3)).

21          In adding 'predominance' and 'superiority' to the qualification-
           for-certification list, the Advisory Committee sought to cover
22          cases 'in which a class action would achieve economies of time,
           effort, and expense, and promote . . . uniformity of decision as
23          to persons similarly situated, without sacrificing procedural
           fairness or bringing about other undesirable results.'
24

25  *Amchem*, 521 U.S. at 615 (quoting Advisory Committee's Notes on Fed. Rules Civ.

26  Proc. 23, 28 U.S.C. App., pp. 696-697 [sic]). While this test has been held to be

27  more demanding than 23(a)'s simple commonality requirement, its thrust is equally

28  pragmatic: "[T]he Advisory Committee had dominantly in mind vindication of 'the

1   rights of groups of people who individually would be without effective strength to

2   bring their opponents into court at all.'" *Amchem*, 521 U.S. at 617 (internal

3   citations omitted).

### 1.   Common Questions of Law and Fact Predominate

5        "Rule 23(b)(3) does not require that all members of the class be identically

6   situated[.]" *Kristianson v. John Mullins & Sons, Inc.*, 59 F.R.D. 99, 106 (E.D.N.Y.

7   1973) (holding that Plaintiff met requirements for class action suit).  The

8   predominance prong calls for class "'cohesion [such that] prosecution of the action

9   through representatives would be quite unobjectionable[.]'" *Amchem*, 521 U.S. at

10  616 (internal citations omitted).

11       Here, the proposed settlement class is defined by common factual predicates

12  that eliminate divergences.  The proposed settlement class consists entirely of

13  former or current MMI consumers similarly injured by the MMI Defendants'

14  alleged misconduct.  All members of the proposed Settlement Class share common

15  questions of fact and law, including whether the MMI Defendants' advertising

16  materials are false and misleading and violate CROA and/or California law,

17  whether solicited "voluntary donations" were advanced fees prohibited by CROA,

18  and whether the MMI Defendants breached their fiduciary duty to act in good faith

19  on behalf of the proposed class members.  These non-exhaustive issues revolve

20  around the MMI Defendants' consistent business practices and do not

21  determinatively rely on class members' individual experiences, making "[a]

22  common inquiry . . . the most efficient and appropriate way to answer these

23  questions." *Wang v. Chinese Daily News*, 231 F.R.D. 602, 613 (C.D. Cal. 2005)

24  (finding class certification appropriate where questions of law and fact revolved

25  around Defendant's conduct); *see also Gunnells v. Healthplan Services*, 348 F.3d

26  417, 428 (4th Cir. 2003) ("[I]f 'common questions predominate over individual

27  questions as to liability, courts generally find the predominance standard of Rule

28  23(b)(3) to be satisfied.'" (internal citations omitted)).

1      Indeed, the only real difference between Class Members is the amounts they

2   paid to Defendants, which is "invariably an individual question and does not defeat

3   class action treatment." *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)

4   (holding that conditional certification was appropriate where damage amounts

5   varied amongst proposed class members).  Given that the MMI Defendants'

6   business practices and operations form the MMI Litigation's focal point, common

7   questions of law and fact necessarily predominate and warrant class treatment. *See,*

8   *e.g., Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 914 (9th Cir. 1964)

9   (holding that Defendant's common course of conduct could legitimize class action

10  standing: "since the complaint alleges a common course of conduct over the entire

11  period, directed against all investors, generally relied upon, and violating common

12  statutory provisions, it sufficiently appears that the questions common to all

13  investors will be relatively substantial."); *Fischer v. Kletz*, 41 F.R.D. 377, 381-82

14  (9th Cir. 1966) (common reliance on Defendant's misrepresentations contributed to

15  propriety of class action suit).

16              **2.     Class Treatment is Superior**

17      There can be no question that class resolution is convenient, desirable and

18  superior in this case. *See Amchem*, 521 U.S. at 615 ("Rule 23(b)(3) permits

19  certification where class suit 'may . . . be convenient and desirable.'" (internal

20  citations omitted)).  Rule 23(b)(3) incorporates a non-exhaustive list of factors to

21  consider when determining a class action's "superiority":

22              (A) the interest of members of the class in individually
            controlling the prosecution or defense of separate actions; (B)
23          the extent and nature of any litigation concerning the
            controversy already commenced by or against members of the
24          class; (C) the desirability or undesirability of concentrating the
            litigation of the claims in the particular forum; (D) the
25          difficulties likely to be encountered in the management of a
            class action.
26

27  Fed. R. Civ. P. 23(b)(3). The Supreme Court has emphasized individual

28  accessibility to the judiciary when evaluating 23(b)(3)'s superiority requirement:

1 │ "'The interest [in individual control] can be high where the stake of each member
2 │ bulks large and his will and ability to take care of himself are strong; the interest
3 │ may be no more than theoretic where the individual stake is so small as to make a
4 │ separate action impracticable.'" *Amchem*, 521 U.S. at 616 (internal citations
5 │ omitted); *see also Local Joint Executive Board of Culinary/Bartender Trust Fund v.*
6 │ *Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) ("When common issues
7 │ present a significant aspect of the case and they can be resolved for all members of
8 │ the class in a single adjudication, there is a clear justification for handling the
9 │ dispute on a representative rather than an individual basis." (emphasis added)
10 │ (internal citations omitted)). "The policy at the very core of the class action
11 │ mechanism is to overcome the problem that small recoveries do not provide the
12 │ incentive for any individual to bring a solo action prosecuting his or her rights. A
13 │ class action solves this problem[.]" *Amchem*, 521 U.S. at 617 (quoting *Mace v. Van*
14 │ *Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

15 │     Here, the claims involved indicate that most Class Members are not even
16 │ aware that they have suffered a wrong at the MMI Defendants' hands. Even if all
17 │ Class Members had knowledge of their claims, the individual claims are small and
18 │ their owners are, by the very nature of the debts giving rise to their claims, unable
19 │ to finance this litigation. Nor would they have any substantial interest in
20 │ controlling it. The alternative to a class action would be for thousands of plaintiffs
21 │ to file individual lawsuits against the MMI Defendants, bringing essentially the
22 │ same claim based on the same evidence. This would needlessly exhaust judicial
23 │ resources. Class treatment will superiorly expedite resolution as to Defendants'
24 │ liability and avoid duplicative efforts.

25 │ **V.    THE COURT SHOULD PRELIMINARILY APPROVE THE**
26 │ **        PROPOSED SETTLEMENT**

27 │     After certifying the Settlement Class, the Court should preliminarily approve
28 │ the Settlement Agreement. Review of a proposed class action settlement is a well-

established two-step process. The first step, the preliminary, pre-notification hearing determines whether the settlement is "within the range of possible approval." *See, e.g., In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). This inquiry takes place against a judicial backdrop favoring settlement. In the Ninth Circuit, settlement of class actions is generally favored as a matter of "strong judicial policy." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)); *see also Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("overriding public interest in settling and quieting litigation," especially in class actions).

> This policy is also evident in the Federal Rules of Civil Procedure and the Local Rules of the United States District Court, Central District of California, which encourage facilitating the settlement of cases. See Fed. R. Civ. P. 16(a)(5) (one of the five purposes of a pretrial conference is to facilitate settlement); L.R. 16-2.9 (requiring parties to exhaust all possibilities of settlement); L.R. 16-15 to 15.9 (setting forth policies and procedures for settlement including encouraging disposition of civil litigation by settlement by any reasonable means) [sic].

*Pilkington v. Cardinal Health, Inc. (In re Syncor ERISA Litig.)*, 516 F.3d 1095, 1101 (9th Cir. 2008). The issue of whether a proposed settlement should be granted approval is a matter within the sound discretion of the district court, and should be exercised with reference to overriding policy considerations. *See, e.g., Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 951 (9th Cir. 1976).

This present hearing is not a "fairness hearing"; its purpose, rather, is to ascertain whether class certification for settlement purposes is proper and whether there is reason to notify class members pending the eventual "fairness hearing." *See Celano v. Marriot Int'l, Inc.*, 242 F.R.D. 544, 548 (N.D. Cal. 2007); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079. The predominant inquiry is whether "plaintiffs' legal causes of action . . .are suitable for resolution on a class

1  wide basis." *Celano*, 242 F.R.D. at 548 (citing *Moore v. Hughes Helicopters, Inc.*,

2  708 F.2d 475, 480 (9th Cir. 1983)).

3   '[The] preliminary determination establishes an initial
   presumption of fairness[;]' . . . '[i]f the proposed settlement

4   appears to be the product of serious, informed, non-collusive
   negotiations, has no obvious deficiencies, does not improperly

5   grant preferential treatment to class representatives or segments
   of the class, and falls within the range of possible approval,

6   then the court should direct that the notice be given to the class
   members of a formal fairness hearing[.]'

7

8  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079 (internal citations

9  omitted); *see also Hanlon*, 150 F.3d at 1027 (The court should give "proper

10  deference to the private consensual decision of the parties."); *In re Inter-Op Hip*

11  *Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio 2001) (When a settlement

12  is negotiated at arms' length by experienced counsel, there is a presumption that it

13  is fair and reasonable.).

14      Here, there is no question that the proposed settlement is at least "within the

15  range of possible approval." Only after extended settlement-oriented information

16  sharing, spread over the course of nearly two and a half years and culminating in

17  two formal mediation sessions, were the Settling Parties able to reach an agreement

18  as to relief for the proposed class. *See S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335,

19  339 (D.S.C. 1991) ("giv[ing] significant weight to the judgment of class counsel"

20  where settlement negotiations were found to be "hard fought and always

21  adversarial" and there was "no indication of any collusion"). The settlement offers

22  substantial benefits for the intended beneficiaries, creating a settlement fund of $6.5

23  million dollars ($6,500,000.00) and eliminating the risk that the Settlement Class,

24  after years of additional litigation, might not recover anything from the MMI

25  Defendants or might recover an amount less than the settlement funds obtained.

26  When comparing the potential costs and benefits of consummating the Settlement

27  versus continuing litigation, courts may look to a number of factors. These factors

28  include:

1

2

3

4

> (1) the strength of the plaintiffs' case compared against the amount offered in settlement; (2) the likely complexity of trial; (3) the length and expense of litigation; (4) the amount of opposition to settlement among affected parties; (5) the opinion of competent counsel; and (6) the stage of the proceedings and the amount of discovery completed at the time of settlement.

5  *Misra v. Decision One Mortgage Company and HSBC Finance Company*, 2009

6  U.S. Dist. LEXIS 119468 at *8-9 (C.D. Cal. April 13, 2009).

7   **A.   The Circumstances Surrounding Negotiations and the Experience**

8  **of Counsel**

9   Prior to entering the proposed settlement, the parties engaged "in sufficient

10  investigation of the facts to enable the court to 'intelligently make ... an appraisal'

11  of the settlement." *Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 114

12  (S.D.N.Y. 1999) (internal quotations omitted). As detailed above, prior to reaching

13  an agreement, the parties exchanged significant amounts of information, including

14  almost 125,000 pages of relevant document discovery. The parties also took eleven

15  depositions, and Plaintiffs' counsel interviewed scores of class members. The

16  settlement negotiations were hard fought, and involved many contested issues,

17  including liability and damages. At all times during their negotiations, the Settling

18  Parties zealously advocated their respective positions. The Settling Parties were

19  clearly informed of the strengths and weaknesses of MMI Named Plaintiff's claims,

20  both factually and legally, and were able to use this knowledge to engage in a

21  complex negotiation process. Given the uncertainties, risks and significant expense

22  of continued litigation, both parties decided that settling the MMI Litigation based

23  on the terms of the proposed settlement was in their best interests. Therefore, all of

24  the circumstances surrounding the negotiations strongly support preliminary

25  approval.

26

27

28  / / /

1

2

**B.     The Settlement Provides a Significant Benefit to the Class in Light of the Risks and Costs of Continued Litigation**

3       The preliminary approval inquiry can be summarized as raising the question

4    of whether the class's interests are better served by settlement than further

5    litigation. *See Eisen*, 417 U.S. at 178. While the Settling Parties believe,

6    respectively, that their claims are and would ultimately result in a favorable verdict,

7    litigation is never free from risk and uncertainty and success cannot be assured. *See*

8    *In re Aremis Soft Corp. Sec. Litig.*, 210 F.R.D. 109, 125 (D.N.J. 2002) ("Regardless

9    of the strength of case counsel might present at trial, victory in litigation is never

10   guaranteed."). Here, a trial and inevitable post-trial appeals would entail substantial

11   time and significant expense for both sides. In light of the substantial amount of

12   time already devoted to this action over the past two-plus years, continued litigation

13   would only delay recovery further. Also, given the fact that the Settlement Class is

14   composed primarily of financially distressed consumers, the proposed settlement

15   provides a benefit that might otherwise be unavailable.

16       In consideration of the Action's facts, the relative strengths and weaknesses

17   of the legal claims and defenses asserted, the serious issues and disputes remaining

18   among the parties, and the time and expense necessary to prosecute this case, the

19   Settling Parties and their counsel believe that the proposed settlement is fair,

20   adequate and reasonable and respectfully submit that the proposed settlement

21   warrants preliminary approval.

22   **VI.    THE PROPOSED FORM AND MANNER OF PROVIDING NOTICE**

23   **TO THE CLASS COMPORT WITH RULE 23 AND DUE PROCESS**

24   **CRITERIA**

25       Rule 23(c)(2)(B) provides that "for any class certified under Rule 23(b)(3),

26   the court must direct to class members the best notice practicable under the

27   circumstances, including individual notice to all members who can be identified

28   through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(e)(1) similarly

MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS WITH THE
MMI DEFENDANTS, CONDITIONAL CLASS CERTIFICATION FOR PARTIAL SETTLEMENT, AND
APPROVAL OF CLASS NOTICE; CASE NO. SACV07-1476-CJC (CTx)                                    18

1  comports, "The court must direct notice in a reasonable manner to all class
2  members who would be bound by a proposed settlement, voluntary dismissal, or
3  compromise." Fed. R. Civ. P. 23(e)(1). Notice is "adequate if it may be
4  understood by the average class member." Newberg on Class Actions, §11:53, at
5  167 (4th Ed. 2002).

6      The proposed settlement provides for a notice campaign reasonably tailored
7  to reach virtually every class member. The proposed Notice, which will be mailed
8  and e-mailed to all former MMI Customers whose names, addresses, and e-mail
9  addresses are reasonably available, and which will be inserted in regular monthly
10 billing statements or similarly recurring communication and e-mailed to existing
11 MMI customers, and, at MMI's option, made available through visits to the
12 consumer's on-line account information, is specifically designed to contain all of
13 the information required by Rule 23 and by applicable law in plain language and in
14 an easy-to-follow format. The Settling Parties propose to provide notice to the
15 Settlement Class Members as soon as practicable, but in no event later than sixty
16 (60) days after entry of the Preliminary Approval Order.

17 **VII.  THE COURT SHOULD SCHEDULE A FINAL APPROVAL**
18 **HEARING AND DEADLINES FOR ELIGIBLE CLASS MEMBERS**
19 **TO OPT IN AND OPT OUT OF THE SETTLEMENT AND FOR ANY**
20 **OBJECTIONS**

21     As reflected in the Stipulation of Settlement, MMI Class Representatives, the
22 MMI Defendants, Settlement Class Counsel and counsel for the MMI Defendants
23 request that the Court approve the following timeline:

- Notice to Settlement Class Members:  No later than sixty (60) days
  after entry of the Preliminary Approval Order.  (See Stipulation of
  Settlement Section H)
- Exclusion Deadline:  45 days from the date upon which notice is
  mailed.  (See Stipulation of Settlement's Definition of "Notice
  Response Deadline".)
- Deadline for Objectors:  Any objections to the settlement are due 45
  days from the date upon which notice is mailed.
- Final Approval Hearing:  The Parties request that the Court schedule a
  final approval hearing if Preliminary Approval is granted.

## VIII. <u>CONCLUSION</u>

For the foregoing reasons, MMI Representative Plaintiffs, and Settlement Class Counsel respectfully request that the Court grant Preliminary Approval of the Settlement on the terms outlined above and in the Stipulation of Settlement, that the Court order certification of the Plaintiff Settlement Class for settlement purposes pursuant to Fed. R. Civ. P. 23(b)(3), that the Court approve the form and content of the Notices and Exclusion Forms, that the Court establish a deadline for Settlement Class Members to opt out or object, and that the Court set a date for a hearing on final approval of the settlement.

Dated:  October 1, 2010                     Respectfully submitted,

By       _/s/ Niall P. McCarthy_____

NIALL P. MCCARTHY
ANNE MARIE MURPHY
**COTCHETT, PITRE & McCARTHY**
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:  (650) 697-6000
Facsimile:   (650) 692-3606

DAVID J. VENDLER, ESQ.
**MORRIS, POLICH & PURDY, LLP**
1055 West Seventh Street, 24th Floor
Los Angeles, CA 90017
Telephone:  (213) 891-9100
Facsimile:   (213) 488-1178

GREGORY S. DUNCAN, ESQ.
**LAW OFFICES OF GREGORY S.
    DUNCAN**
412 East Jefferson Street
Charlottesville, VA 22902
Telephone:  (434) 979-8556
Facsimile:   (434) 979-9766

GARRETT M. SMITH, ESQ.
GARY W. KENDALL, ESQ.
**MICHIE HAMLETT LOWRY
    RASMUSSEN & TWEEL PLLC**
500 Court Square, Suite 300
Charlottesville, VA 22902
Telephone:  (434) 951-7200
Facsimile:   (434) 951-7218

*Attorneys for Plaintiffs*