JOSEPH W. COTCHETT (SBN 36324)
jcotchett@cpmlegal.com
NIALL P. MCCARTHY (SBN 160175)
nmccarthy@cpmlegal.com
ANNE MARIE MURPHY (SBN 202540)
amurphy@cpmlegal.com
**COTCHETT, PITRE & McCARTHY**
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:   (650) 697-6000
Facsimile:    (650) 692-3606

DAVID J. VENDLER (SBN 146528)
dvendler@mpplaw.com
**MORRIS, POLICH & PURDY, LLP**
1055 West Seventh Street, 24th Floor
Los Angeles, CA 90017
Telephone:   (213) 891-9100
Facsimile:    (213) 488-1178

[Additional Counsel on Signature Page]

*Attorneys for Plaintiffs*

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JANICE J. ABAT; ILDIKO NYLEN; JEANNE ROSSEAN; LINDA SHAKESPEARE; SHANNON CARREIRO; NANCY WILKSEN; ERICA HALL; on behalf of themselves and all other persons similarly situated,<br><br>              Plaintiffs,<br><br>      vs.<br><br>CHASE BANK USA, N.A.; MONEY MANAGEMENT INTERNATIONAL, INC.; MONEY MANAGEMENT BY MAIL, INC.; and MONEY MANAGEMENT INTERNATIONAL FINANCIAL EDUCATION FOUNDATION,<br><br>              Defendants. | Case No. SACV07-1476-CJC (ANx)<br><br>**NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF CLASS CLAIMS AGAINST DEFENDANT CHASE BANK USA, N.A., CONDITIONAL CLASS CERTIFICATION FOR PARTIAL SETTLEMENT, AND APPROVAL OF CLASS NOTICE`**<br><br>**[filed concurrently with the Declarations of Niall P. McCarthy and Garrett M. Smith]**<br><br>Date:     July 11, 2011<br>Time:     1:30 P.M.<br>Place:    9B, Santa Ana<br>Judge:    Hon. Cormac J. Carney |

---

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF CLASS CLAIMS AGAINST DEFENDANT
CHASE BANK USA, N.A., CONDITIONAL CLASS CERTIFICATION FOR PARTIAL SETTLEMENT, AND
APPROVAL OF CLASS NOTICE

# NOTICE OF MOTION AND MOTION

## TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on July 11, 2011 at 1:30 pm, or as soon thereafter as the matter may be heard before Honorable Cormac J. Carney in Courtroom 9B of the United States District Court, Central District of California, located at 411 West Fourth Street, Santa Ana, CA 92701, Plaintiffs Janice J. Abat; Ildiko Nylen; Jeanne Rossean; Linda Shakespeare; Shannon Carreiro; Nancy Wilksen; Erica Hall (collectively, the "Chase Named Plaintiffs" or "Chase Class Representatives"), individually and as class representatives, will and hereby do move the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for an Order: (1) granting conditional certification of the Chase Class (defined below) for settlement purposes only; (2) granting preliminary approval of the proposed partial settlement[1] memorialized in the Stipulation and Agreement of Settlement Between Plaintiffs and Chase ("Stipulation") filed herewith, including a proposed draft of the long form Notice Of Proposed Settlement Of Class Action Lawsuit and a short form notice entitled Important Class Action Settlement Information (collectively "Class Notices") and Claim Form; (3) authorizing the proposed form of notices and mechanism for providing notice to the Settlement Class; (4) preliminarily approving the Chase Class Representatives' attorneys as Class Counsel; (5) preliminarily appointing the Chase Named Plaintiffs as Class Representatives and (6) setting a hearing date on final approval of the.

This motion is made on the grounds that: (1) all requirements for certification of a class action solely for settlement purposes are met; (2) the settlement is in the

---

[1] While referred to as a partial settlement herein, it is anticipated that the settlement of this claim against Chase Bank USA, N.A. ("Chase"), if approved, will terminate the case. This is because the Court has already approved the related MMI settlement. The settlement that is the subject of this motion is all that is left of the case.

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF CLASS CLAIMS AGAINST DEFENDANT CHASE BANK USA, N.A., CONDITIONAL CLASS CERTIFICATION FOR PARTIAL SETTLEMENT, AND APPROVAL OF CLASS NOTICE**

i

best interest of Chase Class Members; (3) the proposed Class Notices will fairly apprise Chase Class Members of the terms of the Stipulation; (4) the Chase Class Representatives' attorneys are experienced in complex litigation and have zealously and adequately represented the interests of the Chase Class Members and (5) the proposed time table for mailing the Class Notices, receiving claim forms, lodging objections to the terms of the settlement, filing exclusion forms, and holding a hearing regarding final approval of the Settlement is reasonable and appropriate.

Attached as Exhibit "A" to the Declaration of Niall P. McCarthy submitted herewith is the Stipulation and Agreement of Settlement Between Plaintiffs and Chase which forms the main basis of this motion. This motion is also based on this Notice of Motion and Memorandum of Points and Authorities, the declarations of Niall P. McCarthy and Garrett Smith, the complete files and records in this action, and any oral argument or further evidence allowed by the Court. A proposed form of Order is submitted herewith.

Dated: June 8, 2011       Respectfully submitted,

By     */s/ Garrett M. Smith*

GARRETT M. SMITH, ESQ.
**GARRETT M. SMITH, PLLC**
P.O. Box 1741
Charlottesville, VA 22902
Telephone: (434) 293-4444
Facsimile: (434) 293-7194

NIALL P. MCCARTHY, ESQ.
ANNE MARIE MURPHY, ESQ.
**COTCHETT, PITRE & McCARTHY**
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 692-3606

DAVID J. VENDLER, ESQ.
**MORRIS, POLICH & PURDY, LLP**
1055 West Seventh Street, 24th Floor
Los Angeles, CA 90017
Telephone: (213) 891-9100
Facsimile: (213) 488-1178

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF CLASS CLAIMS AGAINST DEFENDANT CHASE BANK USA, N.A., CONDITIONAL CLASS CERTIFICATION FOR PARTIAL SETTLEMENT, AND APPROVAL OF CLASS NOTICE**

ii

GREGORY S. DUNCAN, ESQ.
**LAW OFFICES OF GREGORY S.**
   **DUNCAN**
412 East Jefferson Street
Charlottesville, VA 22902
Telephone:  (434) 979-8556
Facsimile:   (434) 979-9766

GARY W. KENDALL, ESQ.
**MICHIE HAMLETT**
500 Court Square, Suite 300
Charlottesville, VA 22902
Telephone:  (434) 951-7200
Facsimile:   (434) 951-7218

*Attorneys for Plaintiffs*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND SUMMARY

The Chase Named Plaintiffs submit for the Court's preliminary approval a proposed partial settlement of their class claims against Chase based on the Credit Repair Organizations Act and other laws.  The proposed settlement is designed to benefit a class comprised of consumers under Rule 23 of the Federal Rules of Civil Procedure which shall consist of all individuals nationwide who had a debt management plan ("DMP") for which the individual paid either initial or monthly fees to DebtWorks, Inc., The Ballenger Group, LLC and/or one among the set of credit counseling agencies that were affiliated with DebtWorks (which shall be referred to herein collectively as the "DW CCAs"[2]) relating to a DMP through the date the Court enters its order granting preliminary approval of the Stipulation of the Settlement.

This agreement is the product of lengthy negotiations over the course of nearly two and a half years, including three formal mediation sessions before experienced mediator the Honorable Edward A. Infante (Ret.) of JAMS, substantial informational exchanges between the parties both formally and informally, close analysis of the strengths and weaknesses of the opposing side's arguments, and the procedural posture of the case at the time of settlement. Careful consideration has led the Chase Named Plaintiffs and their counsel to conclude that the proposed settlement is in the best interests of the proposed Settlement Class because it avoids the delay, expense, and uncertainty of further litigation.  The proposed class certification is conditional and for settlement purposes only.

---

[2] "DW CCAs" means any of the following credit counseling entities: AmeriDebt, Inc., Debticated Consumer Counseling, Inc.; A Better Way Credit Counseling, Inc.; CrediCure, Inc.; Mason Credit Counseling, Inc.; Nexum Credit Counseling, Inc.; Neway, Inc.; Debtscape, Inc.; The Credit Network, Inc.; Visual Credit Counseling, Inc.; and PreActiv, Inc.   Each of these organizations entered into substantially identical "fulfillment agreements" with DebtWorks which charged the DW CCAs a fee for providing all of the "back end services" for the DW CCAs.

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF CLASS CLAIMS AGAINST DEFENDANT CHASE BANK USA, N.A., CONDITIONAL CLASS CERTIFICATION FOR PARTIAL SETTLEMENT, AND APPROVAL OF CLASS NOTICE**

1

1    Based on these considerations, the Chase Named Plaintiffs respectfully

2  submit that it is appropriate to grant preliminary approval of the proposed

3  settlement, conditionally certify the proposed Settlement Class for purposes of

4  settlement, approve the proposed form of notices and mechanism for providing

5  notice to the Settlement Class, and set a hearing date on final approval of the

6  Stipulation of Settlement.

7  **II.    PROCEDURAL HISTORY**

8         **A.    Summary of the Case**

9    Chase is a national bank located in Delaware and is one of America's largest

10  credit card lenders.  The DW CCAs were all, at least ostensibly, tax-exempt non-

11  profit corporations that offered "credit counseling services" to consumers through

12  advertisements placed on the Internet, television and radio.  Among the benefits

13  that the DW CCAs uniformly offered to consumers was that they: (1) were non-

14  profit; (2) could "negotiate with your creditors" and (3) could "improve your

15  credit" through re-aging of the consumer's account.  (Re-aging of an account would

16  occur where, after a certain number of months of payments under a DMP, the

17  consumer's lender (like Chase) would retroactively report past due accounts as

18  current).  Within the meaning of the CROA, this would allegedly improve the

19  consumer's credit record, credit report and credit history by retroactively

20  eliminating negative credit references.

21    DebtWorks, Inc. was an organization formed and owned by Andris Pukke.  It

22  was created to hold and operate the back-office processing business of its

23  predecessor in that business, AmeriDebt, Inc. In the late 1990s, Pukke, who

24  founded both AmeriDebt and later DebtWorks, caused AmeriDebt to sell all of its

25  back-office processing operations to DebtWorks, Inc. and required AmeriDebt and

26  the other DWCCAs to lock themselves into  costly fulfillment agreements with

27  DebtWorks.  This arrangement allowed AmeriDebt and the other DWCCAs to pass

28

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF CLASS CLAIMS AGAINST
DEFENDANT CHASE BANK USA, N.A., CONDITIONAL CLASS CERTIFICATION FOR PARTIAL
SETTLEMENT, AND APPROVAL OF CLASS NOTICE**
2

millions of dollars in net revenue to DebtWorks which as a for-profit entity could pay distributions to Pukke—something that AmeriDebt could never have done given its non-profit status.  The price for the fulfillment services contract was unilaterally set by DebtWorks and was not the product of any arms length negotiations.  These "back end" services included processing of payments, fielding consumer calls, interacting with creditors like Chase, and generally performing all of the services that came after the consumer had signed up with one of the DW CCAs.  Far more extensive descriptions of the operations and interactions between the DW CCAs, DebtWorks and Mr. Pukke can be found in Judge Messitte's opinion in *Polacsek v. Debticated Con. Counseling, Inc.*, 413 F.Supp.2d 539 (D.Md. 2005) granting plaintiffs' motion for partial summary judgment in that case, and in the report of the Permanent Subcommittee on Investigations of the Committee on Governmental Affairs of the United States Senate attached to the Declaration of Garrett M. Smith  as Exhibit "A" and of which the Court is requested to take judicial notice.[3]  Both of these descriptions are incorporated herein by this reference.

On December 28, 2007, the Chase Named Plaintiffs filed a complaint, individually and on behalf of  two different, but somewhat overlapping purported classes, against Chase[4] and the MMI Defendants[5] in the United States District Court, Central District of California as Civil Action No. 8:07 cv 1476 CJC (ANx). The Named Plaintiffs filed a First Amended Complaint on June 18, 2008, a Second Amended Complaint on August 21, 2009 and a Third Amended Complaint on

---

[33] Pages of the Report discussing concerns about credit counseling agencies other than the DW CCAs have been redacted.

[4] The Chase Named Plaintiffs originally named JP Morgan Chase & Company and Chase Manhattan Bank U.S.A. Ultimately, the parties stipulated that the proper defendant was Chase Bank USA, N.A.

[5] The MMI Defendants included: Money Management International, Inc., Money Management by Mail and Money Management International Educational Foundation.

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF CLASS CLAIMS AGAINST DEFENDANT CHASE BANK USA, N.A., CONDITIONAL CLASS CERTIFICATION FOR PARTIAL SETTLEMENT, AND APPROVAL OF CLASS NOTICE**

3

January 28, 2011.  The operative complaint in this action is the Third Amended Complaint ("Complaint").

While certain of the Chase Named Plaintiffs asserted claims in the Complaint against the MMI Defendants, those claims form no part of this motion; they are the subject of a separate settlement that has already been finally approved by this Court.  (*See* Document 310, Order Granting: 1) Joint Motion for Final Approval of Partial Settlement of Class Claims with the MMI Defendants; 2) Application for Attorneys' Fees: 3) Judgment).  This settlement, by contrast, only involves the class of persons who paid fees or "voluntary contributions" to the DW CCAs at any time through the date of preliminary approval.

*Vis à vis* Chase, the Complaint asserts that the DW CCAs and DebtWorks were all "credit repair organizations" ("CROs") as defined in 15 U.S.C. Section 1679a.  The Complaint further asserts that the DW CCAs' promises of non-profit status, improved credit and that the DW CCAs would negotiate on the consumers' behalf were made fraudulently and in violation of 15 U.S.C. Section 1679b(a)(3) and (4).  More particularly, the Chase Named Plaintiffs claim that the DW CCAs not only operated for the benefit of creditors like Chase, but that they received millions of dollars in direct monetary support from creditors, including Chase.  The Complaint further alleged that since the only "product/service" the DW CCAs had to sell was the benefits that banks like Chase provided, i.e. lowered interest rates, waiver of fees and re-aging of accounts, the frauds that were practiced against the Chase Named Plaintiffs and those similarly situated to them in connection with the sale of credit repair services by the DW CCAs were the direct or at least indirect result of Chase's acts, practices and/or courses of business such that Chase was liable to the named plaintiffs and the class of similarly situated persons under the provisions of 15 U.S.C. Section 1679b(a)(4).

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF CLASS CLAIMS AGAINST DEFENDANT CHASE BANK USA, N.A., CONDITIONAL CLASS CERTIFICATION FOR PARTIAL SETTLEMENT, AND APPROVAL OF CLASS NOTICE**

4

Chase denied substantially all of the allegations in the Complaint.  In January 2011, after granting the Chase Named Plaintiffs' motion for leave to amend the complaint to modify the class definition, the Court *sua sponte* issued an order to show cause why it should not grant summary judgment in favor of Chase, indicating its view that it did not believe Chase Named Plaintiffs could carry their burden of proof.  The order to show cause changed the parties' positions and the dynamic in the ongoing settlement negotiations.

**B.**     **Parties' Exchange of Information**

This action has been vigorously litigated for over three years, and has been subject to motions to dismiss, motions to transfer venue, motions for protective orders, motions for summary judgment, orders to show cause relating to summary judgment, and to extensive discovery in the form of interrogatories, document productions, depositions, and numerous related motions to compel brought by against Chase.  Document discovery from the Chase Defendants, the MMI Defendants and third party files has collectively included over 125,000 pages of material.  Eleven depositions have been taken in this matter.

**C.**     **Mediation and Negotiations**

In February 2008, the parties first discussed settlement, and over the subsequent course of nearly two and a half years, the Settling Parties have engaged in extensive settlement-oriented information sharing and communications.  The Settling Parties participated in no fewer than three formal mediation sessions before the Honorable Edward A. Infante (Ret.) of JAMS.  The first mediation session was held on May 6, 2010.  The second mediation session was on June 10, 2010.  And the third mediation session was held on January 13, 2011.  All of the mediations were conducted in San Francisco.  At all times, the settlement negotiations have been adversarial, non-collusive, and at arm's length.

Ultimately, the mediations and extended negotiations with Chase have produced a settlement in principle that formed the basis for the Settlement Agreement that is now being presented to the Court.

## III.   KEY SETTLEMENT TERMS

The details of the settlement are contained in the Stipulation signed by the Settling Parties, a copy of which is attached as Exhibit A to the Declaration of Niall P. McCarthy ("McCarthy Dec."). For purposes of preliminary approval, the following summarizes the Stipulation and its key terms.

**A.** **The Settlement Fund**. Chase will pay four million, nine hundred thousand dollars ($4,900,000) for the benefit of the Settlement Class, which amount will be deposited with the Settlement Administrator within ten (10) business days after the Judgment has become final. The Settlement Fund, together with any interest accrued thereon subsequent to deposit (less any fees for maintenance of the Settlement Fund), is to be distributed as follows:

i. First, to pay the costs incurred and charged by Settlement Administrator for notice and settlement administration.

ii. Second, to pay subject to court approval Class Counsel's attorneys' fees and costs and service awards to Plaintiffs. Class Counsel intend to seek from the Settlement Fund no more than $1,715,000 in attorneys' fees and up to $75,000 in costs, and service awards of no more than $5,000 for each Plaintiff in addition to any claims Plaintiffs may have to share in the Settlement Fund. Chase will not oppose Class Counsel's petition for fees, costs and service awards in the foregoing amounts.

iii. Third, to pay claims of Settlement Class Members as set forth below;

iv.    <u>Fourth</u>, if any residual remains after payments above, such residual will be contributed as a cy pres award fifty percent (50%) to the Alexander Law Center at Santa Clara University Law School and fifty percent (50%) to the National Board for Professional Teaching Standards.

**B.    <u>Payment To Settlement Class Members</u>**.  After the deductions in subparagraphs (i) and (ii) in the preceding paragraph, the Settlement Fund will be divided by the Settlement Administrator and be paid to each Settlement Class Member who submits a timely Proof of Claim form.  Settlement Class Members will be entitled to claim an equal share of money available in the Settlement Fund, less deductions for the matters above, <u>except that</u> if the total number of valid claims submitted is less than three thousand (3,000), each Settlement Class Member will receive from the Settlement Fund his or her equal share of two million, two hundred fifty thousand dollars ($2,250,000) with the balance of the Settlement Fund being distributed as a cy pres award as described above.  Claims may be submitted electronically.  The Settlement Administrator shall undertake reasonable efforts to prevent submission of fraudulent claims.  If checks distributed to Settlement Class Members are not cashed within four (4) months of the check issue date, such checks will not be re-issued and the money in question will be distributed instead first to Settlement Class Members who submitted late claims, and thereafter as a cy pres award above.  No payment on any late claim can exceed the payment that would have been made on such claim if such claim had been timely made.  Notwithstanding any decision by the Settlement Administrator, if Class Counsel and Chase agree that a claim should be paid, the Settlement Administrator shall pay the claim.

**C.    <u>Cy Pres Award</u>**.  No payments made as a cy pres award above may be used for any litigation against Chase, political advocacy, lobbying or legislative efforts, and the organizations described therein must agree in writing that they will

not use the funds received pursuant to this settlement for any such purposes. Chase's name (as well as its logos, trademarks or service marks) may not be used in connection with or in association with any of the funded programs in the absence of Chase's advance express written consent.  No press release or other disclosure of the source of funding (except for those mandated by law) may be made in the absence of Chase's advance express written consent.

**D.**    **Quarterly Reports Regarding Distribution of Settlement Fund**. The Settlement Administrator will provide quarterly reports to Class Counsel and counsel for Chase on the distribution of the Settlement Fund until such time as the Settlement Fund is fully paid to eligible recipients and depleted.

**E.**    **Credit For Advances on Behalf of the Settlement Fund**.  Advances by Chase of any notice and administration costs or expenses directly to the Settlement Administrator are to be treated as contributions to the Settlement Fund and shall be credited in their entirety (100%) towards Chase's obligation under the Stipulation.  Chase shall be entitled to full credit even if this settlement is approved in modified form or if a related settlement is approved, but Chase shall not seek reimbursement of advances described in this paragraph from Plaintiffs or Plaintiffs' Counsel in the event no settlement is ultimately approved as to the claims described in the Stipulation.

**F.**    **Taxes**.  The Settlement Administrator will be responsible for any required tax withholdings, remitting funds to the appropriate taxing authorities, when required, and satisfying all associated tax reporting, return and filing requirements.  Settlement Class Members shall be solely responsible for the reporting and payment of any federal, state and/or local income or other tax or any other withholdings, if any, on any payments received pursuant to the settlement. Neither Class Counsel nor Chase make any representations and it is understood and agreed that neither Class Counsel nor Chase have made any representations as to

the taxability of any portions of the settlement payments to any Settlement Class Members, the payment of any costs or an award of attorneys' fees, any payments to Plaintiffs or costs of notice and administration.

**G.     Claim Denials**.  Any Settlement Class Member aggrieved by a decision by the Settlement Administrator to deny his or her claim shall have the right to seek <u>de novo</u> review of such decision by filing a motion with this Court within 30 days of being mailed notice of such decision.  The Court may elect to address all challenges of claim denials in a single proceeding, without permitting oral argument.  In the event of an appeal or appeals by one or more Settlement Class Members of the Court's ruling or rulings confirming the denial of a claim or claims, such appeals shall not delay the Effective Date of this settlement, but the Settlement Administrator shall maintain in the Settlement Fund (or deposit with the Court) sufficient funds to pay the appealed denial or denials in the event all appeals are successful.  If the appeal or appeals are unsuccessful, the appealing Settlement Class Member or Members shall reimburse the Settlement Fund for all reasonable costs and fees incurred in responding to the appeal or appeals.

**H.     No Reversion**.  No portion of the Settlement Fund will revert to Chase.

## III.     NOTICE PROVISIONS

There is already a successful history from the *Polacsek* case of communicating with the customers of the DW CCAs and distributing money to them.  In fact, over $20 million dollars has been successfully distributed to former DW CCA customers from that case.  The Settlement Administrator selected by the Settling Parties, Gilardi & Co., LLC administered the Federal Trade Commission's redress program in the related case of *Federal Trade Commission v. AmeriDebt, Inc. et al*. Civil Action No. PJM 03-3317 (D. Md.).  E-mail and/or physical

addresses of 120,771 class members who had DMPs with DW CCAs other than AmeriDebt are held by the *Polacsek* class administrator (Kurtzman Carson Consultants, LLC). The AmeriDebt customer database was updated as of March 7, 2011 when a final redress distribution was made to those individuals by Gilardi on behalf of the FTC. Relying on the Settlement Administrator's experience with the class members clearly allows for the best notice that is practicable under the circumstances in accordance with Rule 23(c)(2)(B).

Chase also has contact information on the Chase Account List for some 36,000 DW CAA customers whose DMPs remained active through 2005.[6] Counsel for Chase will promptly provide the Chase Account List to the Settlement Administrator after it agrees to be bound by the protective order entered in this action. The Chase Account List will be compared by the Settlement Administrator with the data bases that were provided to Class Counsel by The Ballenger Group, LLC in discovery in the *Polacsek* case for each of the DW CCAs. The Settlement Administrator will ascertain potential members of the Settlement Class and prepare the official Notice List by supplementing the list of members of the *Polacsek* Class and the list of redress recipients from the *AmeriDebt* case (as updated from time to time) with the Chase Account List, by undertaking reasonable measures to assure that duplicate entries do not exist on the Notice List and by obtaining updated addresses via NCOA. The Notice List will contain each Settlement Class Member's name, address, and (if previously obtained by the Settlement Administrator in connection with the administration of the *AmeriDebt* Case) electronic mail addresses.

---

[6] "Chase Account List" means the list of cardmembers and physical mailing addresses compiled by Chase in response to Plaintiffs' First Set of Special Interrogatories, Special Interrogatory No. 4, served in the Action on or about November 5, 2008. Before the litigation was filed, a significant amount of pre-2005 CCA data was discarded in the ordinary course of business when a predecessor bank's computer systems were integrated with Chase's current systems.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF CLASS CLAIMS AGAINST DEFENDANT CHASE BANK USA, N.A., CONDITIONAL CLASS CERTIFICATION FOR PARTIAL SETTLEMENT, AND APPROVAL OF CLASS NOTICE

10

Within thirty (30) days following entry of the Preliminary Approval Order, the Settlement Administrator will email an electronic notice or mail a short form postcard notice to the individuals on the Notice List, containing in substance the information contained in the document attached hereto as Exhibit 1. Included in the e-mail notices will be a link to the claims administration website where Class Members may fill out the Claim Form on-line or download a hard copy of the Claim Form to submit via U.S. Mail. Class Members will not be requested to input personally identifying account information that would subject them to an internet scam. The Claim Form shall be substantially in the form attached hereto as Exhibit 2. If the Settlement Administrator has a Settlement Class Member's electronic mail address, notice may be transmitted by electronic mail rather than by physical mail, but physical mail shall be required if electronic mail is returned as undeliverable. The Settlement Administrator shall make one attempt to re-mail returned physical mail if the returned mail is returned with a forwarding address or if an address search reveals a potentially valid updated address. The Parties shall have no responsibility with respect to mail that is returned undeliverable if an address search does not reveal a potentially valid updated address.

While the Notice List described above is not a perfect list, it is a good one. Given the size of the Settlement Class, its age, its nationwide scope, and the well recognized general ineffectiveness of publication notice, Settlement Class Counsel and Chase believe that individualized notice through both e-mail and regular mail to the members of the class who can be readily identified through the combination of the *Polacsek* and *AmeriDebt* lists and the Chase Account List provides the best notice practicable under the circumstances of this case.

Chase will advance all costs of notice to the Settlement Administrator to be credited against the amount Chase must pay into the Settlement Fund.

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF CLASS CLAIMS AGAINST DEFENDANT CHASE BANK USA, N.A., CONDITIONAL CLASS CERTIFICATION FOR PARTIAL SETTLEMENT, AND APPROVAL OF CLASS NOTICE**

11

## IV.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

Prior to granting preliminary approval of a settlement, the court should determine that the proposed Settlement Class is a proper class for settlement purposes. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (courts should pay heightened, undiluted attention to whether settlement class is unrepresentative or overbroad). It has long been recognized in this Circuit that class actions may be certified for the purpose of settlement. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-1020 (9th Cir. 1998) (upholding certification of the settlement class); *Acosta v. Trans Union, LLC*, 243 F.R.D. 383-84 (C.D. Cal. 2007) (discussing requirements of conditional class certification for settlement purposes). At this stage, a court does not delve into the merits of the plaintiff's claim: "'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'" *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (quoting *Miller v. Mackey Int'l*, 452 F.2d 424, 428 (5th Cir. 1971)).

A court may certify a class when the plaintiff demonstrates that the proposed class and class representatives meet Rule 23(a)'s prerequisites: (1) numerosity; (2) common questions of fact or law; (3) the claims or defense of the representative parties are typical of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). After meeting these requirements, the class must satisfy one of the three subsections of Rule 23(b). *See* Fed. R. Civ. P. 23(b). The Chase Named Plaintiffs and their Counsel respectfully submit that the Settlement Class satisfies each of the requirements of Rule 23(a), and that the Settlement Class shares common questions of law and fact in accordance with Rule 23(b)(3).

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF CLASS CLAIMS AGAINST DEFENDANT CHASE BANK USA, N.A., CONDITIONAL CLASS CERTIFICATION FOR PARTIAL SETTLEMENT, AND APPROVAL OF CLASS NOTICE**

12

Notably in this case, the class being sought to be certified here is the very same class Judge Messitte found was appropriate to certify in the *Polacsek* case. Attached to the Declaration of Garrett Smith is a true and correct copy of Judge Messitte's order certifying the class in *Polacsek*.

### A.   The Numerosity Requirement is Satisfied

Rule 23(a)(1) requires that the class be "so numerous that joinder of all class members is impracticable." *See* Fed R. Civ. P. 23(a)(1). "Impracticability is not measured strictly by number, although numbers are important; rather, impracticability depends on the facts of each case." *Slaven v. BP America, Inc.*, 190 F.R.D. 649,654 (C.D. Cal. 2000). "The Ninth Circuit has not offered a precise numerical standard; other District Courts have, however, enacted presumptions that the numerosity requirement is satisfied by a showing of 25-30 members." *Id.* In this case, the Settlement Class is known to have tens of thousands of class members geographically dispersed persons making joinder impracticable by any reasonable measure. *See* Smith Dec. ¶6.

### B.   The Commonality Requirement is Satisfied

Rule 23(a)(2) is satisfied where the proposed class representatives share at least one question of fact or law with the claims of the prospective class. *See* Fed R. Civ. P. 23(a)(2). "Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1177 (9th Cir. 2007) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).

Here, the claims against Chase all derive from exactly the same fraudulent conduct practiced by the DW CCAs as described in the *Polacsek* opinion and Judge

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF CLASS CLAIMS AGAINST DEFENDANT CHASE BANK USA, N.A., CONDITIONAL CLASS CERTIFICATION FOR PARTIAL SETTLEMENT, AND APPROVAL OF CLASS NOTICE**

13

1  Messitte's class certification order attached to the Smith Dec., as Exhibit "B."  The

2  additional question in this case is whether the fraudulent acts by the DW CCAs

3  were either "directly or indirectly" the result of acts practices or a course of

4  business by Chase.  This issue is common to the claims of the entire class, and was

5  raised by the Court in its order to show cause. Accordingly, the commonality

6  requirement of Rule 23(a)(2) is satisfied.

7          **C.**    **The Typicality Requirement is Satisfied**

8        Rule 23(a)(3)'s typicality requirement demands that "the claims or defenses

9  of the representative parties are typical of the claims or defenses of the class."  Fed

10  R. Civ. P. 23(a)(3).  "'[R]epresentative claims are 'typical' if they are reasonably

11  co-extensive with those of absent class members; they need not be substantially

12  identical.'"  *In re Paxil Litigation*, 212 F.R.D 539, 549 (C.D. Cal. 2003) (quoting

13  *Hanlon*, 150 F.3d at 1020).  "The class representative must be able to pursue his or

14  her claims under the same legal or remedial theories as the represented class

15  members."  *In re Paxil Litigation*, 212 F.R.D. 539 at 549.

16        Here, the Chase Named Plaintiffs and each proposed class member were all

17  DW CCA customers and were subjected to the identical wrongful and fraudulent

18  conduct by the DW CCAs allegedly benefitting DebtWorks, Inc., its founder Andris

19  Pukke, its successor The Ballenger Group, LLC and Chase among other financial

20  institutions.  And, since the theory for imposing liability on Chase (15 U.S.C.

21  Section 1679b(a)(4)) is derivative based on Chase's conduct in allegedly requiring

22  the DW CCAs to be non-profit organizations, providing the benefits they used to

23  attract customers, influencing their business practices, and receiving financial

24  benefits from doing so, the same evidence that would be used to prove the Chase

25  Named Plaintiffs' claims that Chase's actions practices or courses of business

26  directly, or at least indirectly, resulted in the DW CCAs' committing their frauds

27  against the Chase Named Representatives would be used for the entire class.  As

28

such, the Chase Named Plaintiffs' claims are typical of the claims of the proposed class.

### D.   The Adequacy Requirement is Satisfied

The Class Representative Plaintiffs must satisfy Rule 23(a)(4)'s adequacy requirement by showing that they will fairly and adequately protect the interests of the Settlement Class.  *See* Fed R. Civ. P. 23 (a)(4).  The adequacy requirement has two prongs:  "(1) That the representative parties' attorneys be qualified, experienced, and generally able to conduct the litigation; and (2) that the suit not be collusive and plaintiff's interests not be antagonistic to the class."  *In re United Energy Corp. Solar Power Modules Tax Shelter Investors Securities Litigation*, 122 F.R.D. 251, 257 (C.D. Cal. 1988).  As discussed, the Chase Named Plaintiffs have the same interests as the proposed class—all have been allegedly harmed by the same business practices.  The Chase Named Plaintiffs have further actively monitored the progress of this litigation to see that their injuries, as shared with the proposed Settlement Class, are sufficiently remedied.  Therefore, Chase Class Representatives have no interests antagonistic to the proposed Settlement Class. Each of the Chase Named Plaintiffs depositions was taken and completed and each of them fully participated in written discovery.  Furthermore, the Chase Named Plaintiffs have retained experienced counsel.  The significant settlement obtained for the Settlement Class is concrete evidence that they and their counsel have been acting vigorously to fairly and adequately represent the Settlement Class's interests as a whole.  *See* McCarthy Dec., ¶ ___.

In addition to their extensive general litigation experience, Class Counsel have undertaken the leading role nationally in litigating claims arising under the Credit Repair Organizations Act.  *See, e.g., Zimmerman v. Puccio,* 613 F.3d 60 (1st

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF CLASS CLAIMS AGAINST DEFENDANT CHASE BANK USA, N.A., CONDITIONAL CLASS CERTIFICATION FOR PARTIAL SETTLEMENT, AND APPROVAL OF CLASS NOTICE

15

Cir. 2010); *Zimmerman v. Cambridge Credit Counseling Corp.*, 409 F.3d 473 (1st Cir. 2005); *Zimmerman v. Cambridge Credit Counseling Corp.*, 409 F.3d 473(1st Cir. 2005), remanded to 529 F. Supp, 2d 254 (D. Mass. 2008); and *Polacsek v. Debticated Consumer Counseling*, 413 F. Supp 2d 539 (D. Md. 2005).

The Chase Named Plaintiffs and their counsel thus meet the adequacy requirement, without dispute.  Accordingly, the Court should preliminarily approve the Chase Class Representatives' attorneys as Class Counsel, and preliminarily appoint the Chase Named Plaintiffs as Class Representatives.

**E.**     <u>**The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)**</u>

"To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites:  "Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'"  *Amchem*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)(3)).

> In adding 'predominance' and 'superiority' to the qualification-for-certification list, the Advisory Committee sought to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'

*Amchem*, 521 U.S. at 615 (quoting Advisory Committee's Notes on Fed. Rules Civ. Proc. 23, 28 U.S.C. App., pp. 696-697 [sic])**Error! Bookmark not defined.**. While this test has been held to be more demanding than 23(a)'s simple commonality requirement, its thrust is equally pragmatic:  "[T]he Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'"  *Amchem*, 521 U.S. at 617 (internal citations omitted).  Here, all the individual

1   claims are relatively small.  There is no question that but for this action, no relief

2   would have been obtained for any of the class members.

### 1.   Common Questions of Law and Fact Predominate

"Rule 23(b)(3) does not require that all members of the class be identically situated[.]" *Kristianson v. John Mullins & Sons, Inc.*, 59 F.R.D. 99, 106 (E.D.N.Y. 1973) (holding that Plaintiff met requirements for class action suit).  The predominance prong calls for class "'cohesion [such that] prosecution of the action through representatives would be quite unobjectionable[.]'" *Amchem*, 521 U.S. at 616 (internal citations omitted).

Here, as already discussed, the proposed Settlement class is defined by common factual predicates that eliminate divergences.  All members of the proposed Settlement Class share common questions of fact and law, including whether the DW CCAs allegedly committed fraud in connection with their sale of credit repair services and whether Chase's acts practices and courses of business in requiring the DW CCAs to be non-profit organizations and providing them with both direct financial support and the "products" that the DW CCAs sold "directly or indirectly" resulted in the DW CCA's frauds.

These non-exhaustive issues do not determinatively rely on any class members' individual experiences, but are common to all, thus making "[a] common inquiry . . . the most efficient and appropriate way to answer these questions." *Wang v. Chinese Daily News*, 231 F.R.D. 602, 613 (C.D. Cal. 2005) (finding class certification appropriate where questions of law and fact revolved around Defendant's conduct); *see also Gunnells v. Healthplan Services*, 348 F.3d 417, 428 (4th Cir. 2003) ("[I]f 'common questions predominate over individual questions as

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF CLASS CLAIMS AGAINST DEFENDANT CHASE BANK USA, N.A., CONDITIONAL CLASS CERTIFICATION FOR PARTIAL SETTLEMENT, AND APPROVAL OF CLASS NOTICE**

17

to liability, courts generally find the predominance standard of Rule 23(b)(3) to be satisfied.'" (internal citations omitted)).

Indeed, the only real difference between the claims of the various class member claims is the amounts they paid to the DW CCAs, but such differences do not defeat class action treatment." *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) (holding that conditional certification was appropriate where damage amounts varied amongst proposed class members). DebtWorks', the DW CCAs' and Chase's business practices, and their operations, policies and the relationships among them form the focal point. Thus, common questions of law and fact necessarily predominate and warrant class treatment. *See, e.g., Fischer v. Kletz*, 41 F.R.D. 377, 381-82 (9th Cir. 1966) (common reliance on Defendant's misrepresentations contributed to propriety of class action suit).

## 2.   **Class Treatment is Superior**

There can be no question that class resolution is "superior" in this case. *See Amchem*, 521 U.S. at 615 ("Rule 23 (b)(3) permits certification where class suit 'may . . . be convenient and desirable.'" (internal citations omitted)). Rule 23(b)(3) incorporates a non-exhaustive list of factors to consider when determining a class action's "superiority":

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23 (b)(3). The Supreme Court has emphasized individual accessibility to the judiciary when evaluating 23(b)(3)'s superiority requirement: "'The interest [in individual control] can be high where the stake of each member bulks large and his will and ability to take care of himself are strong; the interest

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF CLASS CLAIMS AGAINST DEFENDANT CHASE BANK USA, N.A., CONDITIONAL CLASS CERTIFICATION FOR PARTIAL SETTLEMENT, AND APPROVAL OF CLASS NOTICE**

18

may be no more than theoretic where the individual stake is so small as to make a separate action impracticable.'" *Amchem*, 521 U.S. at 616 (internal citations omitted); *see also Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) ("When common issues present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than an individual basis." (emphasis added) (internal citations omitted)).  "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem[.]" *Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

Here, most Class Members are not even aware that they have allegedly suffered a wrong at the hands of Chase, even if they are now aware (from the *Polacsek* and *AmeriDebt* litigation) of the wrongs that the DW CCAs committed. This is again because the claims against Chase are derivative and based on Chase's policies and procedures that propelled the creation of the "non-profit" credit counseling business model that was the foundation of the DW CCAs' ability to commit their fraudulent acts.  But even if all Class Members had knowledge of their claims, the individual claims are small (typically around $300 for an initial payment and $25.00/month during the DMP term) and their owners are, by the very nature of the debts giving rise to their claims, unable to finance this litigation.  Nor would they have any substantial interest in controlling it.  The alternative to a class action would be for thousands of plaintiffs to file individual lawsuits which, given the complexity of the legal theory being asserted in this case, and the intricateness of its predicate, would be impossible to bring.  And, even if they were brought, it would

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF CLASS CLAIMS AGAINST DEFENDANT CHASE BANK USA, N.A., CONDITIONAL CLASS CERTIFICATION FOR PARTIAL SETTLEMENT, AND APPROVAL OF CLASS NOTICE**

19

needlessly exhaust judicial resources.  Class treatment is superior because it will expedite resolution as to Defendants' liability and avoid duplicative efforts.

## V.     THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT

After certifying the Settlement Class, the Court should preliminarily approve the Stipulation.  Review of a proposed class action settlement is a well-established two-step process.  The first step, the preliminary, pre-notification hearing determines whether the settlement is "within the range of possible approval."  *See, e.g., In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).  This inquiry takes place against a judicial backdrop favoring settlement.  In the Ninth Circuit, settlement of class actions is generally favored as a matter of "strong judicial policy."  *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)); *see also Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("overriding public interest in settling and quieting litigation," especially in class actions).

> This policy is also evident in the Federal Rules of Civil Procedure and the Local Rules of the United States District Court, Central District of California, which encourage facilitating the settlement of cases. See Fed. R. Civ. P. 16(a)(5) (one of the five purposes of a pretrial conference is to facilitate settlement); L.R. 16-2.9 (requiring parties to exhaust all possibilities of settlement); L.R. 16-15 to 15.9 (setting forth policies and procedures for settlement including encouraging disposition of civil litigation by settlement by any reasonable means) [sic].

*Pilkington v. Cardinal Health, Inc. (In re Syncor ERISA Litig.)*, 516 F.3d 1095, 1101 (9th Cir. 2008).  The issue of whether a proposed settlement should be granted

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF CLASS CLAIMS AGAINST DEFENDANT CHASE BANK USA, N.A., CONDITIONAL CLASS CERTIFICATION FOR PARTIAL SETTLEMENT, AND APPROVAL OF CLASS NOTICE

20

approval is a matter within the sound discretion of the district court, and should be exercised with reference to overriding policy considerations.  *See, e.g., Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 951 (9th Cir. 1976).

> '[The] preliminary determination establishes an initial presumption of fairness[;]'  . . . '[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing[.]'

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079 (internal citations omitted); *see also Hanlon*, 150 F.3d at 1027 (The court should give "proper deference to the private consensual decision of the parties."); *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio 2001) (When a settlement is negotiated at arms' length by experienced counsel, there is a presumption that it is fair and reasonable.).

Here, there is no question that the proposed settlement is at least "within the range of possible approval."  Only after extended formal discovery and informal settlement-oriented information sharing, spread over the course of over three years and culminating in three formal mediation sessions, were the Settling Parties able to reach an agreement as to relief for the proposed class.  *See S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) ("giv[ing] significant weight to the judgment of class counsel" where settlement negotiations were found to be "hard fought and always adversarial" and there was "no indication of any collusion").

The settlement offers substantial benefits for the intended beneficiaries, creating a Gross Settlement Fund of $4.9 million dollars and eliminating the risk that the Settlement Class, after years of additional litigation, might not recover anything from Chase.  (The Court recently expressed "doubt" as to the ability of the

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF CLASS CLAIMS AGAINST DEFENDANT CHASE BANK USA, N.A., CONDITIONAL CLASS CERTIFICATION FOR PARTIAL SETTLEMENT, AND APPROVAL OF CLASS NOTICE

21

plaintiffs to prevail on their claims in its show cause order of January 13, 2011). Class Counsel believe the expected payout will compare favorably to the settlement approved for MMI, which occurred <u>before</u> the Order to Show Cause issued and without a summary judgment motion pending. When comparing the potential costs and benefits of consummating the Settlement versus continuing litigation, courts may look to a number of factors.  These factors include:

> (1) the strength of the plaintiffs' case compared against the amount offered in settlement; (2) the likely complexity of trial; (3) the length and expense of litigation; (4) the amount of opposition to settlement among affected parties; (5) the opinion of competent counsel; and (6) the stage of the proceedings and the amount of discovery completed at the time of settlement.

*Misra v. Decision One Mortgage Company and HSBC Finance Company*, 2009 U.S. Dist. LEXIS 119468 at *8-9 (C.D. Cal. April 13, 2009).

### A.   <u>The Circumstances Surrounding Negotiations and the Experience of Counsel</u>

Prior to entering the proposed settlement, the parties engaged "in sufficient investigation of the facts to enable the court to 'intelligently make … an appraisal' of the settlement."  *Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 114 (S.D.N.Y. 1999) (internal quotations omitted).  To begin with, Class Counsel were already well familiar with the industry and possessed tens of thousands of pages of documents relating to the business practices and relationships among DebtWorks and the DW CCAs.  This information formed the principal basis of the plaintiffs' claim that Chase allegedly knew or should have known that its policies which literally created the DMPs that would be administered by the purportedly non-profit DW CCAs directly enabled the frauds of DebtWorks and the DW CCAs. And, as detailed above, prior to reaching an agreement, the parties exchanged significant amounts of information, including almost 125,000 pages of relevant document discovery.  Motions to compel were brought (and won) against Chase.  Discovery sanctions were also issued against Chase as a result of those motions.  The parties

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF CLASS CLAIMS AGAINST DEFENDANT CHASE BANK USA, N.A., CONDITIONAL CLASS CERTIFICATION FOR PARTIAL SETTLEMENT, AND APPROVAL OF CLASS NOTICE**

22

took eleven depositions, and Plaintiffs' counsel interviewed scores of class members.  The settlement negotiations were hard fought, and involved many contested issues, including liability and damages.  At all times during their negotiations, the Settling Parties zealously advocated their respective positions.  The Settling Parties were clearly informed of the strengths and weaknesses of Plaintiff's claims, both factually and legally, and were able to use this knowledge to engage in a complex negotiation process.  Given the uncertainties, risks and significant expense of continued litigation, both parties decided that settling the litigation based on the terms of the proposed settlement was in their best interests.  Therefore, all of the circumstances surrounding the negotiations strongly support preliminary approval.

### B.    The Settlement Provides a Significant Benefit to the Class in Light of the Risks and Costs of Continued Litigation

The preliminary approval inquiry can be summarized as raising the question of whether the class's interests are better served by settlement than further litigation. *See Eisen*, 417 U.S. at 178.  While the Settling Parties each believe, respectively, that their positions would be vindicated if the matter went to verdict, litigation is never free from risk and uncertainty and success cannot be assured.  *See In re Aremis Soft Corp. Sec. Litig.*, 210 F.R.D. 109, 125 (D.N.J. 2002) ("Regardless of the strength of case counsel might present at trial, victory in litigation is never guaranteed.").  Here, the theory against Chase was novel.  It has never been presented before in any case.  Indeed, this Court openly expressed its own "doubt" about the viability of the Plaintiffs' claim in its recent order.  Chase also filed a motion for summary judgment asserting the statute of limitations as a defense.  In short, there was risk.  But Chase too faced exposure.  The Court granted plaintiffs' motion to amend and Chase's potential exposure was significant.  Further, a trial

and inevitable post-trial appeals would entail substantial time and significant expense for both sides.

In light of the substantial amount of time already devoted to this action over the past three-plus years, continued litigation would only delay recovery further. Also, given the fact that the Settlement Class is composed primarily of financially distressed consumers, the proposed settlement provides a benefit that might otherwise be unavailable.

In consideration of the Action's facts, the relative strengths and weaknesses of the legal claims and defenses asserted, the serious issues and disputes remaining among the parties, and the time and expense necessary to prosecute this case, the Settling Parties and their counsel believe that the proposed settlement of $4.9 million dollars is fair, adequate and reasonable and respectfully submit that the proposed settlement warrants preliminary approval.

## VI.   THE PROPOSED FORM AND MANNER OF PROVIDING NOTICE TO THE CLASS COMPORT WITH RULE 23 AND DUE PROCESS CRITERIA

Rule 23(c)(2)(B) provides that "for any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23 (c)(2)(B).  Rule 23(e)(1) similarly comports, "The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1).  Notice is "adequate if it may be understood by the average class member."  Newberg on Class Actions, §11:53, at 167 (4th Ed. 2002).

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF CLASS CLAIMS AGAINST
DEFENDANT CHASE BANK USA, N.A., CONDITIONAL CLASS CERTIFICATION FOR PARTIAL
SETTLEMENT, AND APPROVAL OF CLASS NOTICE

24

The proposed settlement provides for a notice campaign reasonably tailored to the unique and particular circumstances of this case.  The proposed class notices will be mailed and/or e-mailed to all former DW CCA customers who had accounts with any of the DW CCAs during the class period whose names, addresses, and e-mail addresses are reasonably available.[7]  The class notices will consist of a short form notice which will present not only a short description of the case, but both a website address (where claimants can make their claim directly online, or exclude themselves) and a toll-free telephone number where class members can request a claim form or exclusion form be sent to them.  The short form notice will contain all of the information required by Rule 23 and by applicable law in plain language and in an easy-to-follow format.  The website will contain the long form notice as well as informational material such as the Complaint, names of counsel, etc.  The Settling Parties propose to provide notice to the Settlement Class Members as soon as practicable, but in no event later than thirty (30) days after entry of the Preliminary Approval Order.

## VII.  THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING AND DEADLINES FOR ELIGIBLE CLASS MEMBERS TO OPT IN AND OPT OUT OF THE SETTLEMENT AND FOR ANY OBJECTIONS

As reflected in the Stipulation, Chase Named Plaintiffs, Chase, Settlement Class Counsel and counsel for Chase request that the Court approve the following timeline:

---

[7] As explained above, the Settlement Administrator will meld the Chase (incomplete, but more recent) Account List base with *AmeriDebt* and *Polacsek* litigation databases, themselves updated from The Ballenger Group, LLC (older, but more complete) data to form the list of persons to whom the Class Notice will be sent.

1    •     Notice to Settlement Class Members:  No later than thirty (30)

2    days after entry of the Preliminary Approval Order.  (See Stipulation, section

3    6.2)

4    •     Exclusion Deadline:  60 days from the date upon which notice is

5    mailed.  (See Stipulation, section 7.4(a))

6    •     Deadline for Objectors:  Any objections to the settlement are

7    due 60 days from the date upon which notice is mailed.  (See Stipulation,

8    section 7.5(b))

9    •     Final Approval Hearing:  The Parties request that the Court

10   schedule a final approval hearing on November 7, 2011, if Preliminary

11   Approval is granted.

12

13   **VIII.  <u>CONCLUSION</u>**

14   For the foregoing reasons, Plaintiffs, and Settlement Class Counsel

15   respectfully request that the Court grant Preliminary Approval of the settlement on

16   the terms outlined above and in the Stipulation, that the Court order certification of

17   the Plaintiff Settlement Class for settlement purposes pursuant to Fed. R. Civ. P. 23

18   (b)(3), that the Court approve the form and content of the Notices and Exclusion

19   Forms, that the Court establish a deadline for Settlement Class Members to opt out

20   or object, and that the Court set a date for a hearing on final approval of the

21   settlement.

22   Dated:  June  8, 2011

23                          Respectfully submitted,

24

25   By     */s/ Garrett M. Smith*

26   GARRETT M. SMITH, ESQ.
     **GARRETT M. SMITH, PLLC**
     P.O. Box 1741

27   Charlottesville, VA 22902
     Telephone: (434) 293-4444

28

NIALL P. MCCARTHY
ANNE MARIE MURPHY
**COTCHETT, PITRE & McCARTHY**
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:  (650) 697-6000
Facsimile:   (650) 692-3606

DAVID J. VENDLER, ESQ.
**MORRIS, POLICH & PURDY, LLP**
1055 West Seventh Street, 24th Floor
Los Angeles, CA 90017
Telephone:  (213) 891-9100
Facsimile:   (213) 488-1178

GREGORY S. DUNCAN, ESQ.
**LAW OFFICES OF GREGORY S.
   DUNCAN**
412 East Jefferson Street
Charlottesville, VA 22902
Telephone:  (434) 979-8556
Facsimile:   (434) 979-9766

GARY W. KENDALL, ESQ.
**MICHIE HAMLETT PLLC**
500 Court Square, Suite 300
Charlottesville, VA 22902
Telephone:  (434) 951-7200
Facsimile:   (434) 951-7218

*Attorneys for Plaintiffs*

1

**PROOF OF SERVICE**

2

3

*Abat, et al. v. JP Morgan Chase & Co., et al.*
USDC, Central District of California, Case No. SACV 07-1476 CJC (CTx)

4

5

6

7

8

9

I am employed in the City of Charlottesville.  I am over the age of 18 and not a party to this action.  My business address is 100 Court Square, Suite A, P.O. Box 1741, Charlottesville, Virginia 22902.   On June 8, 2011, I served the foregoing  document,  described  as  **NOTICE  OF  MOTION  AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION  FOR  PRELIMINARY  APPROVAL    OF  SETTLEMENT  OF CLASS  CLAIMS  AGAINST  DEFENDANT  CHASE  BANK  USA,  N.A., CONDITIONAL     CLASS    CERTIFICATION     FOR     PARTIAL SETTLEMENT,    AND  APPROVAL  OF  CLASS;  DECLARATION  OF NIALL P. McCARTHY;  and DECLARATION OF GARRETT M. SMITH** in this action by placing

10

☐  the original of the document
☐   true copies of the document in a sealed envelopes to the following addressees only:

11

12

13

☐  **BY U.S. MAIL**  I deposited such envelope in the mail at Charlottesville, Virginia.  The envelopes were mailed with postage thereon fully prepaid.

14

15

16

17

I am readily familiar with Garrett M. Smith PLLC's practice of collection and processing correspondence for mailing.   Under that practice, documents are deposited with the U.S. Postal Service on the same day which is stated in the proof of service, with postage fully prepaid at Charlottesville, Virginia in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date stated in this proof of service.

18

19

☒  **BY E-MAIL  -**  I caused true copies of the above-referenced document to be transmitted via CM/ECF e-mail to the parties as listed on the attached SERVICE LIST

20

21

22

☐ **BY FEDERAL EXPRESS**  I am familiar with the firm's practice of collecting and processing correspondence for delivery via Federal Express.  Under that practice, it would be picked up by Federal Express on that same day at Charlottesville, Virginia and delivered to the parties as listed on this Proof of Service the following business morning.

23

☐ **BY FACSIMILE**  I caused the above-referenced document to be transmitted via facsimile to the parties as listed on this Proof of Service.

24

25

I declare under penalty of perjury under the laws of the United States of America and the State of Virginia, that the above is true and correct.

26

Executed on June 8, 2011, at Charlottesville, Virginia.

27

28

*/s/  Garrett M. Smith*
Garrett M. Smith

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF CLASS CLAIMS AGAINST DEFENDANT CHASE BANK USA, N.A., CONDITIONAL CLASS CERTIFICATION FOR PARTIAL SETTLEMENT, AND APPROVAL OF CLASS NOTICE**
28

| 1 | JANICE J. ABAT, et al. v. JP MORGAN CHASE & CO., et al. |
| 2 | U.S. District Court, Central District of California, Case No. SACV 07-1476 CJC(CTx) |

3                          <u>**SERVICE LIST**</u>

| | | |
|---|---|---|
| 4 | Joseph W. Cotchett, Esq. | *Co-Counsel for Plaintiffs* |
| 5 | Niall P. McCarthy, Esq.<br>Anne Marie Murphy, Esq. | |
| 6 | COTCHETT, PITRE & MCCARTHY<br>840 Malcolm Road, Suite 200 | |
| 7 | Burlingame, CA 94010<br>Phone:    (650) 697-6000 | |
| 8 | Fax:       (650) 697-0577<br>E-mail:   jcotchett@cpmlegal.com | |
| 9 |        nmccarthy@cpmlegal.com<br>       amurphy@cpmlegal.com | |
| 10 | David J. Vendler, Esq. | *Co-Counsel for Plaintiffs* |
| 11 | MORRIS POLICH & PURDY LLP<br>1055 West Seventh Street | |
| 12 | Suite 2400<br>Los Angeles, California 90017 | |
| 13 | Phone:    (213) 891-9100<br>Fax:       (213) 488-1178 | |
| 14 | E-mail:   dvendler@mpplaw.com | |
| 15 | GREGORY S. DUNCAN, ESQ.<br>LAW OFFICES OF GREGORY S. | |
| 16 |    DUNCAN<br>412 East Jefferson Street | |
| 17 | Charlottesville, VA 22902<br>Telephone:   (434) 979-8556 | |
| 18 | Facsimile:    (434) 979-9766 | |
| 19 | GARY W. KENDALL, ESQ.<br>MICHIE HAMLETT PLLC | |
| 20 | 500 Court Square, Suite 300<br>Charlottesville, VA 22902 | |
| 21 | Telephone:  (434) 951-7200<br>Facsimile:   (434) 951-7218 | |
| 22 | | |
| 23 | Stephen J. Newman, Esq.<br>Julia B. Strickland, Esq. | *Attorneys for the CHASE Defendants* |
| 24 | Lucas Messenger, Esq.<br>STROOCK & STROOCK & LAVAN LLP | |
| 25 | Century Park East<br>Los Angeles, CA 90067-3086 | |
| 26 | Phone:    (310) 556-5806<br>Fax:       (310) 556-5959 | |
| 27 | E-mail:   snewman@stroock.com<br>      jstrickland@stroock.com | |
| 28 |       lmessenger@stroock.com | |

1

Douglas C. Emhoff, Esq.                          ***Attorneys for the MMI Defendants***

2

Jon-Jamison Hill, Esq.

VENABLE LLP

3

2049 Century Park East, Suite 2100

Los Angeles, CA 90067

4

Phone:    (310) 229-9900

Fax:      (310) 229-9901

5

E-Mail    demhoff@venable.com

          jjhill@venable.com

6

Lawrence H. Cook, II, Esq.                       ***Attorneys for the MMI Defendants***

7

Edward Patrick Boyle, Esq.

VENABLE LLP

8

1270 Avenue of the Americas, 25th Floor

New York, NY 10020

9

Phone:    (212) 307-5500

Fax:      (212) 307-5598

10

E-Mail:   lhcooke@venable.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28