UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JANICE J. ABAT ET AL.,<br><br>       **Plaintiffs,**<br><br>    **vs.**<br><br>CHASE BANK USA, N.A., MONEY MANAGEMENT INTERNATIONAL, INC., MONEY MANAGEMENT BY MAIL, INC., and MONEY MANAGEMENT INTERNATIONAL FINANCIAL EDUCATION FOUNDATION,<br><br>       **Defendants.** | Case No.: SACV 07-01476-CJC(ANx)<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO (1) CONDITIONALLY CERTIFY A SETTLEMENT CLASS, (2) PRELIMINARILY APPROVE SETTLEMENT, (3) DIRECT DISTRIBUTION OF CLASS NOTICES, and (4) SET A HEARING FOR FINAL APPROVAL OF CLASS SETTLEMENT** |

**INTRODUCTION**

On December 28, 2007, Plaintiffs Janice J. Abat, Ildiko Nylen, Jeanne Rossean, Linda Shakespeare, Shannon Carreiro, Nancy Wilksen and Erica Hall (collectively "Chase Named Plaintiffs") commenced this putative class action on behalf of themselves and others similarly situated against Defendants Money Management International, Inc., Money Management by Mail, Inc., and Money Management International Financial

Education Foundation (collectively "MMI") and Chase Bank USA, N.A. ("Chase"), alleging violations of the federal Credit Repair Organizations Act ("CROA"), Fair Debt Collection Practices Act ("FDCPA"), as well as state statutory and common law claims. Chase Named Plaintiffs participated in debt management plans ("DMP") administered by MMI or by DebtWorks, Inc., the Ballenger Group, LLC and/or one of the other credit counseling agencies affiliated with DebtWorks, Inc. (collectively the "DW CCAs"). Chase Named Plaintiffs allege that MMI and the DW CCAs falsely held themselves out as non-profit organizations that would negotiate on behalf of consumers who were behind on their credit card and loan payments to help improve their debt situation and provide debt counseling and other educational services.  Chase Named Plaintiffs allege that MMI and the DW CCAs actually operated for the benefit of Chase and other creditors and received millions of dollars in direct monetary support from those creditors.  Chase Named Plaintiffs assert that Chase is directly or indirectly responsible for the alleged fraud by MMI and the DW CCAs, and seek restitution of the fees or voluntary contributions they paid to MMI and the DW CCAs to cover the cost of setting up their DMPs.  On February 28, 2011, this Court granted final approval to a partial settlement between MMI and the named plaintiffs and class members who had participated in DMPs with MMI.  (Ct. Order, Feb. 28, 2011, Dkt. No. 310.)  The partial settlement did not include any of the Chase Named Plaintiffs' claims against Chase.  (*See id.*)  Chase Named Plaintiffs now move for conditional class certification for partial settlement of the class claims against Chase, preliminary approval of the partial settlement, approval of class notice, and to set a hearing date for final approval of the partial settlement.  Chase Named Plaintiffs have made a sufficient showing that the requirements of Federal Rule of Civil Procedure 23 are satisfied and the terms of the partial settlement are likely to be fair, adequate and reasonable.  Chase Named Plaintiffs' motion is GRANTED.

**BACKGROUND**

Chase Named Plaintiffs are ordinary consumers who enrolled in DMPs to help manage large amounts of credit card and other debt, restore their credit ratings, and lower their interest rates. (*See* Third Am. Compl. ¶¶ 19–23.) Ms. Hall enrolled directly in a DMP promoted by MMI after seeing advertisements on television and the internet. (*Id.* ¶ 116.) Ms. Abat, Ms. Rossean, and Ms. Wilksen enrolled in DMPs sponsored by AmeriDebt, (*id.* ¶¶ 67, 91, 96), which were acquired by MMI in 2004 when AmeriDebt filed for bankruptcy, (*id.* ¶ 65.) Ms. Nylen enrolled in a DMP sponsored by one of the DW CCAs, The Credit Network, in or about April 2002. (*Id.* ¶ 99.) Ms. Shakespeare signed up for a DMP sponsored by another of the DW CCAs, Visual Credit Counseling, in April 2002. (*Id.* ¶ 107.) Ms. Carreiro enrolled in a DMP sponsored by yet another of the DW CCAs, Debticated, in October 2002. (*Id.* ¶ 111.) Ms. Abat, Ms. Rossean, Ms. Nylen, Ms. Shakespeare, and Ms. Carreiro placed Chase accounts in their respective DMPs. (*Id.* ¶¶ 68, 93, 104, 109, 114.) Chase Named Plaintiffs paid up-front fees (called "voluntary contributions") to set up their DMP accounts and subsequently paid monthly fees to either MMI or the DW CCAs as part of their monthly DMP payments. (*Id.* ¶¶ 69–70, 92, 94, 97, 103, 105, 110, 113, 122, 124.) Chase Named Plaintiffs allege that each of the credit counseling agencies sponsoring their respective DMPs misrepresented to them that they were non-profit tax-exempt organizations and failed to disclose the nature of their relationship with Chase. (*Id.* ¶¶ 71–90, 102, 108, 112, 117.) In addition, Chase Named Plaintiffs allege that MMI and the DW CCAs did not provide the services they promised, did not provide the disclosures required by the CROA, and collected fees in advance in violation of the CROA. (*Id.* ¶¶ 71–90.)

Specifically, Chase Named Plaintiffs allege Chase engaged in acts and practices to control MMI's and the DW CCAs' DMP business practices, by placing representatives on the Board of Directors of the National Foundation for Credit Counseling, (*id.* ¶¶ 193–

94), paying "fair share" payments to support the credit counseling agencies in proportion to the success rate of that agency's DMPs, (*id.* ¶¶ 196, 199, 201–07), determining what benefits were offered to the consumers through the DMPs, (*id.* ¶¶ 211–20), and referring consumers to the DMPs, (*id.* ¶¶ 225–30). Accordingly, Chase Named Plaintiffs sought to hold Chase derivatively liable for the allegedly fraudulent representations regarding the non-profit status of and credit repair services offered by MMI and the DW CCAs. (*See id.* ¶¶ 221–24, 294–97.)

Chase Named Plaintiffs filed this action on December 28, 2007 on behalf of two overlapping classes: (1) consumers nationwide who participated in DMPs sponsored by MMI and paid fees to MMI, and (2) consumers nationwide who participated in DMPs sponsored by any of the DW CCAs, which included a sub-class of consumers who also had accounts with Chase in their DMPs. (*See id.* ¶ 275.) Chase Named Plaintiffs asserted ten causes of action against MMI and three causes of action against Chase for violations of federal and state law. After this Court granted motions to dismiss filed by MMI and Chase on May 29, 2008 with leave to amend, (Ct. Order, May 29, 2008, Dkt. No. 69), the Chase Named Plaintiffs filed a First Amended Complaint on June 18, 2008. Chase and MMI renewed their motions to dismiss, which this Court denied by order dated September 11, 2008. (Ct. Order, Sept. 11, 2008, Dkt. No. 91.) The parties agreed to the filing of a Second Amended Complaint on August 21, 2009. (*See* Ct. Order, Aug. 18, 2009, Dkt. No. 128). In the meantime, the parties engaged in substantial discovery, much of which was vigorously contested. The Court granted Chase's motion for partial summary judgment on two of Plaintiffs' state-law claims. (Ct. Order, Sept. 14, 2010, Dkt. No. 268.) On November 4, 2010, the Court preliminarily approved a partial settlement of the class claims against MMI, (Ct. Order, Nov. 4, 2010, Dkt. No. 282), which the Court finally approved on February 28, 2011, (Ct. Order, Feb. 28, 2011, Dkt. No. 310.) At the same time, Chase Named Plaintiffs obtained leave from the Court to file a Third Amended Complaint on January 27, 2011. The Court also, on its own motion,

issued an order to Chase Named Plaintiffs to show cause why summary judgment should not be entered against them because the Court doubted whether Plaintiffs could establish that Chase engaged "directly or indirectly" in acts in violation of the CROA.  (Ct. Order, Jan. 13, 2011, Dkt. No. 292.)  Chase Named Plaintiffs and Chase subsequently reached the proposed partial settlement agreement, which releases all class members' claims against Chase and terminates the case.

**ANALYSIS**

Chase Named Plaintiffs seek conditional certification for purposes of the partial settlement of a class pursuant to Federal Rule of Civil Procedure 23(b)(3) that includes "all individuals nationwide who had a DMP for which the individual paid either initial or monthly fees to Debtworks, Inc., the Ballenger Group or any of the DW CCAs." (McCarthy Decl. Ex. A ¶ 3.2.)  The partial settlement will be binding on all class members who do not opt-out of the settlement by filing a written request, confirming that the individual is a member of the class and that he or she requests to be excluded and signed under penalty of perjury, within the time provided for in the partial settlement. (*Id.* ¶ 7.4(a).)  *See* Fed. R. Civ. P. 23(c)(3).

**I.  Certification Requirements of Rule 23**

When a plaintiff seeks conditional class certification for purposes of settlement, the Court must ensure that the requirements of Rule 23 are met as if the case were going to be fully litigated.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003).  Rule 23 contains two sets of requirements for certification of a class.  First, Rule 23(a) contains four requirements applicable to all proposed classes: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to

the class (commonality); (3) the claims or defenses of the representative party are typical of the claims or defenses of the class (typicality); and (4) the representative party will fairly and adequately protect the interests of the absent class members (adequacy).  Fed. R. Civ. P. 23(a).  Second, the party seeking certification must show that the action falls within one of the three "types" of classes described in the subsections of Rule 23(b).  In this case, Chase Named Plaintiffs seek certification pursuant to 23(b)(3), which allows certification if "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  The Court concludes that Chase Named Plaintiffs have presented sufficient evidence to show that the proposed class satisfies the requirements of Rule 23(a) and Rule 23(b)(3).

**A.  Numerosity**

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."  In this case, the number of participants in DMPs administered by the DW CCAs nationwide is estimated to be more than one hundred thousand, (*see* Garrett Decl. ¶ 6), so the numerosity requirement is easily satisfied.

**B.  Commonality**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  The commonality requirement has been construed permissively, and may be satisfied if plaintiffs show that "class members have shared legal issues by divergent facts or that they share a common core of facts but base their claims for relief on different legal theories."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1988).  *But see Wal-Mart Stores, Inc. v. Dukes*, --- S.Ct. ----, No. 10-277, 2011 WL 2437013, at *7 (U.S. June

20, 2011) (interpreting commonality requirement to mean a "common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").  The DW CCA DMP consumers' claims against Chase share significant legal and factual questions because they are premised on allegations that Chase violated the CROA by directly or indirectly controlling the acts of MMI and the DW CCAs, and that both MMI and the DW CCAs made similarly false representations regarding their non-profit status and the credit repair services they would perform on behalf of consumers.  (*See* Third Am. Compl. ¶¶ 294–97.)  The Court finds that the commonality requirement is satisfied.

## C.  Typicality

Rule 23(a)(3) requires that the "claims and defenses of the representative parties are typical of the claims or defense of the class."  Representative claims are "typical" if they are "reasonably coextensive with those of the absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  Named plaintiffs must be members of the class they represent.  *Id.*  Here, some of the Chase Named Plaintiffs participated in DMPs sponsored or subsequently acquired by MMI and paid fees to MMI, and some of the Chase Named Plaintiffs participated in DMPs sponsored by the DW CCAs and paid fees to the DW CCAs.  (*See* Third Am. Compl. ¶¶ 67, 91, 96, 99, 107, 111, 116.)  Those Chase Named Plaintiffs who enrolled in DMPs sponsored by the DW CCAs relied on the same misrepresentations and failures to disclose information as other DW CCA DMP consumers.  (*See id.* ¶¶ 71–90.)  In addition, there is no evidence that any of the Chase Named Plaintiffs are subject to any defenses that do not apply to other members of the class.  (*See id.*)  The typicality requirement is satisfied.

**D.  Adequacy**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  This factor requires that (1) the proposed representative plaintiffs do not have conflicts of interest with the proposed class, and (2) the plaintiffs are represented by qualified and competent counsel.  *Staton*, 327 F.3d at 957.  The concern in the context of a class action settlement is to ensure that there is no collusion between the defendant, class counsel and class representatives to pursue their own interests at the expense of the interests of the rest of the members of the class.  *Id.* at 958 & n.12.

Chase Named Plaintiffs have the same incentive as the absent class members to recover the fees paid to the DW CCAs, and there is no evidence that Chase Named Plaintiffs have any conflicts of interest with the proposed class.  Chase Named Plaintiffs have also retained counsel with extensive class action litigation experience, that have litigated several other claims under the CROA.  (Pls.' Mem. P. & A Supp. Mot. Prelim. Approval at 15:23–16:2.)  Chase Named Plaintiffs and their counsel have vigorously prosecuted this action, engaging in extensive discovery over the last two and a half years, (McCarthy Decl. ¶¶ 5–7), and participating in three formal mediation sessions and extensive negotiations to reach the proposed settlement, (*id.* ¶¶ 8–10).  The adequacy requirement is also satisfied.

**E.  Rule 23(b)(3) Requirements**

The "predominance" and "superiority" requirements of Rule 23(b)(3) are designed to ensure that a class action achieves economies of time, effort, and expense without sacrificing procedural fairness or bringing about undesirable results.  *Amchem*, 521 U.S. at 615.  To ascertain whether the "predominance" and "superiority" requirements of Rule

23(b)(3) are satisfied, courts look to: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; (D) the likely difficulties to be encountered in managing a class action." Fed. R. Civ. P. 23(b)(3); *Amchem Prods., Inc.*, 521 U.S. 615–16; *Wolin v. Jaguar Land Rover North Am.*, LLC, 617 F.3d 1168, 1175 (9th Cir. 2010) (noting that list of factors provided in Rule 23(b)(3) is not exhaustive). Chase Named Plaintiffs have made a sufficient showing that both the predominance and superiority requirements of Rule 23(b)(3) are also satisfied.

Predominance" tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022. The predominance requirement overlaps with Rule 23(a)(3)'s commonality requirement, but it is a more demanding inquiry. *Id.* at 1019. The "main concern in the predominance inquiry . . . [is] the balance between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009). With respect to Chase Named Plaintiffs' claims against Chase, the common issues to be resolved significantly outweigh the individual questions. Specifically, the common issues include: (1) whether Chase acted to directly or indirectly control the DW CCAs by placing representatives on the Board of Directors of the National Foundation for Credit Counseling, (*id.* ¶¶ 193–94), paying "fair share" payments to support the credit counseling agencies in proportion to the success rate of that agency's DMPs, (*id.* ¶¶ 196, 199, 201–07), determining what benefits were offered to the consumers through the DMPs, (*id.* ¶¶ 211–20), and referring consumers to the DMPs, (*id.* ¶¶ 225–30), (2) whether the DW CCAs made false representations in their advertising and sales of credit repair services, including holding themselves out as non-profits and promising to provide credit repair services such as account "re-aging," (*id.* ¶¶ 294–97), and (3) whether Chase can be held derivatively

-9-

liable for the alleged fraud committed by the DW CCAs.  The only individual questions are the amounts of fees that each individual class member paid to the DW CCAs and thus the amount of damages to which each individual is entitled, which does not defeat a class certification.  *See Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975).

A class action may be superior "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  It is also superior when "no realistic alternative" to a class action "exists."  *Id.* at 1234–35.  Here, individual class members do not have a strong stake in the litigation because the fees that each person paid to the DW CCAs amount to only a few hundred dollars.  *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.")  In light of the small amount of each individual's claims, and the fact that many participants in DMPs are likely still struggling to pay off debts and unable to finance their own lawsuits, there is no realistic alternative to a class action.  It would be grossly inefficient to litigate the thousands of claims individually, especially where the claims against Chase are based on the same derivative liability theory and the only individual question is the amount of fees each individual paid to the DW CCAs.

## II. Fairness of Proposed Partial Settlement

Chase Named Plaintiffs seek preliminary approval of the proposed partial settlement with Chase.  Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, reasonable, and accurate."  *Staton*, 327 F.3d at 959 (quoting *Hanlon*, 150 F.3d at 1026).  To determine whether this standard is met, a district court must consider a number of factors, including "'the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of

maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement." *Id.* (citing *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)).  At the preliminary approval stage, a full "fairness hearing" is not required; rather the inquiry is whether the settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

Having reviewed the negotiation process and the substantive terms of the proposed partial settlement, the Court finds no obvious deficiencies or grounds to doubt the fairness of the settlement.  Chase Named Plaintiffs and Chase have engaged in extensive discovery to exchange information about the strengths and weaknesses of each other's case, much of which was vigorously contested.  (McCarthy Decl. ¶¶ 5–7.)  Over 125,000 pages of material have been produced by Chase, MMI and third parties and twelve depositions have been taken, including each of the seven class representatives and high level employees of both MMI and Chase.  (*Id.* ¶ 5.)  The parties began settlement negotiations in February 2008, which culminated in three formal mediation sessions overseen by Hon. Edward A. Infante (Ret.) on May 6 and June 10, 2010, and on January 13, 2011.  (McCarthy Decl. ¶¶ 8–10.)  Chase Named Plaintiffs face several risks in trying to prove their claims, such as establishing their novel derivative liability theory in which they allege that Chase is liable for the alleged fraudulent representations made by MMI and the DW CCAs because Chase directly or indirectly controlled the credit counseling agencies, and defeating Chase's motion for partial summary judgment based on the statutes of repose for the CROA.  Although Chase strongly denies the merits of Chase Named Plaintiffs' claims, continuing class action litigation with a large number of class members that has already lasted more than three years poses a substantial burden in terms

of time and expense to Chase.  (*See* McCarthy Decl. Ex. A at 3.)  Settlement offers
substantial benefits to both sides.

       The substantive terms of the partial settlement agreement also suggest that the
settlement is adequate and reasonable on its face.  In exchange for class members' release
of all claims against Chase, the settlement provides for a gross settlement amount of $4.9
million, which after the costs of the settlement administrator, the attorneys' fees, and the
Chase Named Plaintiffs' enhancement payments, shall be distributed per capita among
members of the class that submit timely Claim Forms to the settlement administrator.
(McCarthy Decl. Ex. A ¶ 3.4(a).)  Each of the Chase Named Plaintiffs will receive
enhancement payments of $5000, subject to court approval.  (*Id.* ¶ 4.1.)  Each class
member shall have 90 days from the date of this order to submit a Claim Form to the
settlement administrator, Gilardi & Co, (*id.* ¶ 6.4), which can be obtained from the
settlement website and may be submitted by mail or electronically, (*id.* ¶ 6.2).  All
claimants must certify under penalty of perjury that they are members of the settlement
class.  (*Id.* ¶ 6.3).  Claims that are postmarked more than 90 days after the date of this
order shall be disallowed, but may nevertheless be paid by the settlement administrator if
funds are available to pay them from uncashed checks to other settlement class members.
(*Id.* ¶ 6.4.)  If the total number of valid claims submitted is less than 3000, each class
member will receive his or her per capita share of $2.25 million, with the balance of the
settlement fund after costs, attorneys' fees and enhancement payments being provided to
the Alexander Law Center at Santa Clara University Law School (50%) and the National
Board for Professional Teaching Standards (50%).  (*Id.* ¶¶ 3.4(a)(iv), 3.4(b).)  Requests
for exclusion must be made in writing and mailed to the settlement administrator,
postmarked no later than 60 days after the notice of settlement is sent to the class
members.  (*Id.* ¶ 7.4(a).)  If more than 5000 class members choose to opt out of the
proposed partial settlement, Chase retains the right to terminate the agreement.  (*Id.* ¶
7.4(d); Confidential Letter Agreement, Dkt. No. 330.)

The settlement agreement also provides for attorneys' fees of up to $1,715,000 and up to $75,000 in costs, subject to court approval.  (*Id.* ¶ 4.1.)  The Ninth Circuit has recognized that under the common fund doctrine, where attorneys' fees are paid from a common fund awarded to the entire class, twenty-five percent is a reasonable percentage of recovery to be dedicated to attorneys' fees.  *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 273 (9th Cir. 1989).  Here, the attorneys' fees award amounts to approximately thirty-five percent of the gross settlement amount.  Given the size of the fee award, counsel should submit substantial evidence to justify the requested award of attorneys' fees in a separately filed motion to be heard at the same time as the final approval of the partial settlement.  Class members shall have an opportunity to object to the amount of the attorneys' fess award at that time.  *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 995 (9th Cir. 2010) (holding that district court must ensure that class has an adequate opportunity to review and object to its counsel's fee motion).

At this stage, the Court concludes that the proposed partial settlement is sufficiently fair and adequate on its face to warrant distribution of notice to the class members.  The Court shall reserve its final judgment on the fairness and adequacy of the settlement amount until the fairness hearing after class members have had an opportunity to object.

## III.  Notice of Proposed Partial Settlement

Chase Named Plaintiffs also seek approval of their proposed form and manner of notice of the settlement to absent class members.  Rule 23(c)(2)(B) provides that the court must direct to class members the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  The proposed notice procedures satisfy that standard.  Under the terms of the settlement, Chase will bear the costs of providing notice to absent class members through

the settlement administrator, but those costs will count 100 percent towards the gross settlement amount of $4.9 million.  (McCarthy Decl. Ex. A ¶¶ 3.4(a), 6.1.)  Notice will be mailed and emailed to the last known addresses of all former DW CCA customers whose names, addresses and email addresses can be identified from the database prepared and maintained by Gilardi & Co from the 2005 *Polascsek* class action against the DW CCAs, which shall be compared to Chase's list of addresses for all Chase account holders since 2005.  (*Id.* ¶¶ 3.3, 6.2; Smith Decl. ¶¶ 5–6.)  The settlement administrator shall undertake reasonable measures to assure that duplicate entries do not exist on the Notice list to obtain updated address via the National Change of Address system.  (McCarthy Decl. Ex. A ¶ 3.3.)  If the electronic mail notice is returned as undeliverable, the settlement administrator shall send a physical mail notice.  (*Id.* ¶ 6.2.)  The settlement administrator shall make one attempt to remail returned physical mail if the mail is returned with a forwarding address or if an address search reveals a potentially valid updated address.  (*Id.*)

The notice must "clearly and concisely state, in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that the class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion, and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).  The amended proposed notice forms and claim forms satisfy these requirements.  (Pls.' Mem. P. & A. Supp. Mot. Prelim. Approval, June 8, 2011, Exs. 1, 2.)  However, the Court directs the parties to include the information about the opt-out limit of 5000 class members in the longer-form notice submitted as Exhibit 1, (*see id.* Ex. 1), as that information is material to consumers' decisions regarding whether to participate in the settlement.  The Court directs that notice be distributed to the class members according the terms and timeline provided in the settlement agreement.

**CONCLUSION**

For the foregoing reasons, the Court conditionally certifies an opt-out class of all consumers who participated in DMPs administered by the DW CCAs.  The Court also preliminarily approves the proposed partial settlement agreement submitted by the parties, subject to any objections that may be made by class members and a final approval by the Court after a fairness hearing.  The Court directs the settlement administrator to send out the proposed notices of settlement, together with the Claim Forms, to all class members no later than 30 days after the date of this order.  The Court shall issue the proposed order submitted by the parties outlining the notice procedures for the class concurrently with this order.  The Court will hold a hearing on final approval of the settlement on November 7, 2011, at 1:30 p.m.

DATED:     July 11, 2011

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE