1 | JOSEPH W. COTCHETT (SBN 36324)
jcotchett@cpmlegal.com
2 | NIALL P. McCARTHY (SBN 160175)
nmccarthy@cpmlegal.com
3 | ANNE MARIE MURPHY (SBN 202540)
amurphy@cpmlegal.com
4 | **COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
5 | Burlingame, California 94010
Telephone: (650) 697-6000
6 | Facsimile: (650) 692-3606

7 | DAVID VENDLER (SBN 146528)
dvender@mpplaw.com
8 | **MORRIS POLICH & PURDY** LLP
1055 West Seventh Street, 24th Floor
9 | Los Angeles, California 90017
Telephone: (213) 891-9100
10 | Facsimile: (213) 488-1178

11 | [Additional Plaintiffs' Counsel on Signature Page]

12 | *Attorneys for Plaintiffs*

13 |

14 | **UNITED STATES DISTRICT COURT**

15 | **CENTRAL DISTRICT OF CALIFORNIA**

16 | **JANICE J. ABAT; ILDIKO NYLEN;**   Case No. SACV 07-1476 CJC (ANx)
**JEANNE ROSSEAN; LINDA**
17 | **SHAKESPEARE; SHANNON**
**CARRIERO; NANCY WILKSEN;** on   **PLAINTIFFS' NOTICE OF**
18 | behalf of themselves and all other persons   **MOTION AND MOTION FOR**
similarly situated,   **FINAL APPROVAL OF PARTIAL**
19 |    **SETTLEMENT OF CLASS**
**CLAIMS WITH CHASE BANK**
20 |    Plaintiffs,   **USA, N.A.; MEMORANDUM OF**
**POINTS AND AUTHORITIES**
21 |    vs.
**[Filed concurrently with the**
22 | **JPMORGAN CHASE & CO.; CHASE**   **Declarations of David J. Vendler and**
**MANHATTAN BANK USA, N.A.;**   **Trisha Solorzano as well as the**
23 | **MONEY MANAGEMENT**   **[Proposed] Order]**
**INTERNATIONAL, INC.; MONEY**
24 | **MANAGEMENT BY MAIL, INC.;** and   Date:   November 7, 2011
**MONEY MANAGEMENT**   Time:   1:30 p.m.
25 | **INTERNATIONAL FINANCIAL**   Ctrm.:   "9-B"
**EDUCATION FOUNDATION,**   Judge:   Hon. Cormac J. Carney
26 |    Defendants.

27 |

---

28 | PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL    SACV 07-1476 CJC (ANx)
APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS
WITH CHASE BANK USA, N.A.

1

**TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

   **PLEASE TAKE NOTICE** that on November 7, 2011 at 1:30 pm or as soon thereafter as the matter may be heard before Honorable Cormac J. Carney in Courtroom "9B" of the United States District Court, Central District of California, located at 411 West Fourth Street, Santa Ana, CA 92701, Plaintiffs Janice J. Abat, Ildiko Nylen, Jeanne Rossean, Linda Shakespeare, Shannon Carreiro, Nancy Wilksen and Erica Hall (collectively, the "Chase Named Plaintiffs" or "Chase Class Representatives"), individually and as class representatives, will and hereby do move the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for an Order granting final approval of the Joint Stipulation of Partial Class Action Settlement and Release.[1]

   This motion is made on the grounds that: (1) all requirements for certification of a class action solely for settlement purposes are met; (2) the partial settlement is in the best interest of Class Members; (3) the Class Notice fairly apprised Class Members of the terms of the Settlement; (4) the Chase Class Representatives' attorneys are experienced in complex litigation and have zealously and adequately represented the interests of Class Members and (5) the time table for mailing the Class Notice, receiving claims/exclusions, and lodging objections to the terms of the settlement, as previously ordered were appropriate and have been fully executed.

   This motion is based on this Notice of Motion and Memorandum of Points and Authorities, the Declaration of David J. Vendler, the complete files and records in this action, and any oral argument allowed by the Court. A proposed form of Order and Judgment is submitted herewith.

---

[1] Although styled as a "partial" settlement, if this motion is approved it will conclude the case as the Court earlier finally approved the partial settlement with Chase's co-defendant, MMI.

2

Dated: October 28, 2011

Respectfully submitted,

By:   /s/ David J. Vendler

NIALL P. McCARTHY
ANNE MARIE MURPHY
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:  (650) 697-6000
Facsimile:   (650) 692-3606

DAVID J. VENDLER, ESQ.
**MORRIS POLICH & PURDY** LLP
1055 West Seventh Street, 24th Floor
Los Angeles, CA 90017
Telephone:  (213) 891-9100
Facsimile:   (213) 488-1178

GREGORY S. DUNCAN, ESQ.
**LAW OFFICES OF GREGORY S. DUNCAN**
412 East Jefferson Street
Charlottesville, VA 22902
Telephone:  (434) 979-8556
Facsimile:   (434) 979-9766
*(Admitted Pro Hac Vice)*

GARRETT M. SMITH
**GARRETT M. SMITH, PLLC**
100 Court Square, Suite A
Charlottesville, VA 22902
Telephone: (434) 293-4444
Facsimile: (434) 293-7914
*(Admitted Pro Hac Vice)*

GARY W. KENDALL, ESQ.
**MICHIE HAMLETT LOWRY
RASMUSSEN & TWEEL PLLC**
500 Court Square, Suite 300
Charlottesville, VA 22902
Telephone:  (434) 951-7200
Facsimile:   (434) 951-7218
*(Admitted Pro Hac Vice)*

*Attorneys for Plaintiffs*

3

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS
WITH CHASE BANK USA, N.A.**

SACV 07-1476 CJC (ANx)

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY ................................................................ 1

II.   PROCEDURAL HISTORY ........................................................................... 2

    A.   Plaintiffs' Complaint ....................................................................... 2

    B.   Parties' Exchange of Information ..................................................... 3

    C.   Mediation and Negotiations ............................................................. 4

III.  KEY SETTLEMENT TERMS AND PROVISIONS FOR CLASS NOTICE ........................................................................................................ 5

    A.   The Settlement Fund ......................................................................... 5

    B.   Notice to Class .................................................................................. 6

    C.   Claims Administration ...................................................................... 8

IV.   LEGAL STANDARD .................................................................................... 9

    A.   Settlements That Are Fair, Adequate, and Reasonable Warrant Approval by the Court ....................................................................... 9

    B.   The Law Favors Prompt Resolution of Class Action Claims ................. 11

V.    ANALYSIS: THE SETTLEMENT SATISFIES THE STANDARDS FOR JUDICIAL APPROVAL ...................................................................... 12

    A.   The Settlement Resulted from Arm's Length Negotiations and the Experience and Views of Counsel Favor Settlement ......................... 12

    B.   The Strength of the Plaintiffs' Cases Is Well-Supported ......................... 14

    C.   Settlement is Appropriate in Light of the Risks Involved and the Results Achieved ................................................................................ 15

    D.   Maintaining Class Certification ......................................................... 15

        1.   Common Questions of Law and Fact Predominate ...................... 16

        2.   Class Treatment is Superior ....................................................... 18

    E.   Amount of Settlement and Benefits to the Class ................................ 19

    F.   The Extent of Discovery Completed and the Well Developed Record Favor Final Approval of the Settlement ..................................... 20

i

G.    The Experience and Views of Counsel Favor Final Approval ................ 20

H.    The Absence of Opposition to the Settlement Supports Final
      Approval ....................................................................................... 22

VI.   CONCLUSION ........................................................................................... 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS
WITH CHASE BANK USA, N.A.**                      SACV 07-1476 CJC (ANx)

# TABLE OF AUTHORITIES

**Page**

<u>Cases</u>

*7-Eleven Owners for Fair Franchising v. Southland Corp.*,
  85 Cal. App. 4th 1135, 1146 (2000) .................................................... 12

*Alberto v. GMRI, Inc.*,
  252 F.R.D. 652, 658-59 (E.D. Cal. 2008) ............................................ 9

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)(3) ...................... 15, 16, 18

*Behrens v. Wometco Enterprises, Inc.*,
  118 F.R.D. 534, 538-39 (S.D. Fla. 1988) ............................................ 11

*Blackie v. Barrack*,
  524 F.2d 891, 905 (9th Cir. 1975) ...................................................... 17

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610, 617 (N.D. Cal. 1979) ............................................. 10

*Class Plaintiffs v. Seattle*,
  955 F.2d 1268, 1276 (9th Cir. 1992) ......................................... 9, 10, 11

*D'Amato v. Deutsche Bank*,
  236 F.3d 78, 86 (2nd Cir. 2001) .......................................................... 11

*Diaz v. Trust Territory of Pac. Islands*,
  876 F.2d 1401, 1408 (9th Cir. 1989) ................................................... 9

*Dunk v. Ford Motor Co.*,
  48 Cal. App. 4th 1794, 1802 (1996) .................................................... 12

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15, 18 (N.D. Cal. 1980) ...................................................... 12

*Fischer v. Kletz*,
  41 F.R.D. 377, 381-82 (9th Cir. 1966) ................................................ 17

*Franklin v. Kaypro Corp.*,
  884 F.2d 1222 (9th Cir. 1989) ............................................................. 11

*Gunnells v. Healthplan Services*,
  348 F.3d 417, 428 (4th Cir. 2003) ...................................................... 17

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011, 1026 (9th Cir. 1998) ......................................... 9, 10, 11

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS
WITH CHASE BANK USA, N.A.**

SACV 07-1476 CJC (ANx)

*Harris v. Palm Springs Alpine Estates, Inc.*,
   329 F.2d 909, 914 (9th Cir. 1964) .................................................................. 17

*In re Aremis Soft Corp. Sec. Litig.*,
   210 F.R.D. 109, 125 (D.N.J. 2002) .................................................................. 14

*In re Cendant Corp. Litig.*,
   264 F.3d 201, 231, 233 (3rd Cir. 2001) ............................................................ 11

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
   MDL Docket No. 901, 1992 U.S. Dist. LEXIS 14337, at *8 (C.D. Cal.
   June 10, 1992) .................................................................................................. 13

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454, 458 (9th Cir. 2000) ...................................................................... 9

*In re Motorsports Merchandise Antitrust Litig.*,
   112 F. Supp. 2d 1329, 1338 (N.D. Ga. 2000) ...................................... 14, 20, 22

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) .................................................. 11

*In re United Energy Corp. Solar Power Modules Tax Shelter Investors
   Securities Litigation*,
   122 F.R.D. 251, 257 (C.D. Cal. 1988) .............................................................. 10

*In re Wash. Pub. Power Supply Sys. Secs. Litig.*,
   720 F. Supp. 1379, 1387 (D. Ariz. 1989) ......................................................... 12

*Kirkorian v. Borelli*,
   695 F. Supp. 446, 451 (N.D. Cal. 1988) ........................................................... 11

*Kristianson v. John Mullins & Sons, Inc.*,
   59 F.R.D. 99, 106 (E.D.N.Y. 1973) .................................................................. 16

*Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas
   Sands, Inc.*,
   244 F.3d 1152, 1162 (9th Cir. 2001) ................................................................ 18

*Mace v. Van Ru Credit Corp.*,
   109 F.3d 338, 344 (7th Cir. 1997) .................................................................... 18

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173, 1178 (9th Cir. 1977) .................................................................. 9

*Misra v. Decision One Mortgage Company and HSBC Finance Company*,
   2009 U.S. Dist. LEXIS 119468 at *8-9 (C.D. Cal. April 13, 2009) .................. 20

*Nat'l Rural Telecoms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523, 525 (C.D. Cal. 2004) ....................................................... passim

*Officers for Justice v. Civil Service Comm'n*,
   688 F.2d 615, 625 (9th Cir. 1982) ............................................................. 10, 11

iv

*Polacsek v. Debticated Consumer Counseling,*
413 F. Supp 2d 539 (D. Md. 2005) ........................................................ 6, 13, 16, 21

*Polar Int'l Brokerage Corp. v. Reese,*
187 F.R.D. 110, 114 (S.D.N.Y. 1999) ........................................................ 20

*Republic Nat'l Life Ins. Co. v. Beasley,*
73 F.R.D. 658, 667 (S.D.N.Y. 1977) ........................................................ 10

*S.C. Nat'l Bank v. Stone,*
139 F.R.D. 335, 339 (D.S.C. 1991) ........................................................ 19

*Wang v. Chinese Daily News,*
231 F.R.D. 602, 613 (C.D. Cal. 2005) ........................................................ 17

*Wellman v. Dickinson,*
497 F. Supp. 824, 830 (S.D.N.Y. 1980) ........................................................ 11

*Zimmerman v. Cambridge Credit Counseling Corp.,*
409 F.3d 473 (1st Cir. 2005); ........................................................ 13, 21

**Statutes**

15 U.S.C. Section 1679b(a)(4) ........................................................ 3

**Other Authorities**

Fed. Judicial Ctr., Manual for Complex Litigation, § 21.633 (4th Ed. 2004) ................ 9

**Rules**

Rule 23(a) of the Federal Rules of Civil Procedure ........................................................ 1

Rule 23(b)(3) of the Federal Rules of Civil Procedure ........................... 1, 15, 16, 17, 18

Rules 23(e) of the Federal Rules of Civil Procedure ........................................................ 2, 9

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL**          SACV 07-1476 CJC (ANx)
**APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS**
**WITH CHASE BANK USA, N.A.**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND SUMMARY

The Chase Named Plaintiffs in this consumer class action seek final approval of a $4,900,000 class action settlement (the "Settlement"), which settles the remaining portion of this class action case by settling the claims against Defendant Chase Bank USA, N.A. ("Chase").

On July 11, 2011, this Court granted preliminary approval of the Chase Settlement, and conditionally certified, for settlement purposes only, a class (the "Settlement Class") under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure of all individuals nationwide who had a debt management plan ("DMP") for which the individual paid either initial or monthly fees to DebtWorks, Inc. ("DebtWorks"), The Ballenger Group, LLC ("Ballenger") and/or one among the set of credit counseling agencies that were affiliated with DebtWorks, Inc. ("the DW CCAs.")[2]  The Court also approved the proposed plan for providing notice to the class and set a final approval and attorneys' fee hearing for November 7, 2011 at 1:30 p.m. [Docket No. 335].

The settlement now before the Court for final approval is designed to benefit a class comprised of consumers who made payments for credit counseling services, including specifically Debt Management Plans ("DMPs").  The agreement is the product of lengthy negotiations over the course of nearly three years, including three formal mediation sessions before experienced mediator the Honorable Edward A. Infante (Ret.) of JAMS, substantial information exchanges, extensive formal discovery proceedings including numerous

---

[2] "DW CCAs" means any credit counseling agency affiliated or related at any time to Andris Pukke, Eriks Pukke, Debtworks, Inc., or the Ballenger Group, (including without limitation: AmeriDebt, Inc., Debticated Consumer Counseling, Inc.; A Better Way Credit Counseling, Inc.; CrediCure, Inc.; Mason Credit Counseling, Inc.; Nexum Credit Counseling, Inc.; Neway, Inc.; Debtscape, Inc.; The Credit Network, Inc.; Visual Credit Counseling, Inc.; and PreActiv, Inc.)

1

1    motions to compel, and close analysis of the strengths and weaknesses of the opposing

2    sides' arguments through summary judgment motions and otherwise.

3    **II.    PROCEDURAL HISTORY**

4        **A.    Plaintiffs' Complaint**

5        On December 28, 2007, the Chase Named Plaintiffs filed a complaint, individually

6    and on behalf of two purported classes against Chase,[3] Money Management International,

7    Inc., Money Management by Mail and Money Management International Educational

8    Foundation (collectively "MMI Defendants") in the United States District Court, Central

9    District of California as Civil Action No. 8:07 cv 1476 CJC (CTx).  The Chase Named

10   Plaintiffs filed a First Amended Complaint on June 18, 2008, and a Second Amended

11   Complaint on August 21, 2009.  The operative complaint in this action (as to Chase) is the

12   Third Amended Complaint ("Complaint").[4]  In summary, the Third Amended Complaint

13   alleges that the DW CCAs uniformly represented to consumers that the DW CCAs were

14   non-profit entities that could provide credit repair services.  The Third Amended Complaint

15   further alleges that the representations of non-profit status that were made in connection

16   with the offers of credit repair services were fraudulent and that the Chase Named Plaintiffs

17   all paid fees, qua "voluntary contributions" to DebtWorks, Ballenger, or the DW CCAs on

18   the basis of, *inter alia*, the fraudulent representation that the DW CCAs were non-profit

19   organizations.  The reason that Chase can be held liable for these wrongs is also explained

20   in the Third Amended Complaint.  Specifically, the Chase Named Plaintiffs alleged that

21   CCAs such as DebtWorks operated solely and exclusively for the benefit of creditors like

22

23   _____

23   [3] JP Morgan Chase & Company and Chase Manhattan Bank U.S.A. were the entities named

24   in the original complaint.  Chase Bank USA, N.A. appeared and stipulated that it was the

24   correct entity to respond to the claims.

25   [4] A Third Amended Complaint was filed on January 27, 2011 [Docket No. 296].  This was

26   after Preliminary Approval of Partial Settlement with the MMI Defendants had already

27   been granted under the Second Amended Complaint.

                                        2

28   **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL**          SACV 07-1476 CJC (ANx)
     **APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS**
     **WITH CHASE BANK USA, N.A.**

Chase and received millions of dollars in direct monetary support from Chase. The Complaint further alleged that since the only product or service the DW CCAs had to sell consisted of the "benefits" that banks like Chase provided, i.e. lowered interest rates, waiver of fees and re-aging of accounts, the frauds that were practiced against the Plaintiffs and those similarly situated to them in connection with the sale of credit repair services by the DW CCAs were the direct (or at least indirect) result of Chase's acts, practices and/or courses of business such that Chase could be liable to the named plaintiffs and the class of similarly situated persons under the provisions of 15 U.S.C. Section 1679b(a)(4).

Chase denied (and continues to deny) all of Plaintiffs' claims as to liability, damages, legal fees, punitive damages, and all other forms of relief as well as the class allegations asserted.

**B.    Parties' Exchange of Information**

This action has been vigorously litigated for more than three years with approximately 335 Docket entries. As to Chase (as compared with the MMI Defendants), the litigation was particularly contentious and has included motions filed by Chase: (1) to dismiss plaintiff's complaints [two motions -- Docket Nos. 24 and 75]; (2) to transfer venue of the case [Docket No. 21 and 32]; (3) for protective order [two motions -- Docket Nos. 111 and 124]; (4) for summary judgment [two motions -- Docket Nos. 183 and 249]; (5) to compel production of documents [Docket No. 156]; and (6) challenging the Magistrate Judge's order denying Chase' motion to compel (and granting the Chase Named Plaintiffs' cross-motion for protective order relating to certain documents) [Docket No. 181].

The Chase Named Plaintiffs also filed numerous motions of their own relating exclusively to the Chase side of the case. These included, *inter alia*: (1) multiple extensive motions to compel Chase's compliance with discovery (4 motions – Docket Nos. 115, 133, 212, and 261); (2) to amend their complaint (Docket No. 289]; (3) to compel Chase's consumer referral partner, third-party Peregrin Financial Services, Inc., to produce

3

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS
WITH CHASE BANK USA, N.A.

SACV 07-1476 CJC (ANx)

1  documents [Docket No. 150]; (4) for a protective order relating to the production of certain

2  documents [Docket No. 153]; (5) to reconsider the Court's ruling on summary judgment

3  (Docket No. 272); and (6) challenging the Court's *sua sponte* order to show cause re why

4  summary judgment should not be granted to Chase [Docket No. 294].[5]

5      In addition to these motions, extensive discovery in the form of interrogatories,

6  document production, and depositions were also conducted by the Chase Named Plaintiffs

7  against Chase. Document discovery from Chase included hundreds of thousands of pages

8  of material which were all reviewed. Twelve depositions were taken, including the

9  depositions of all seven Class Representatives and high level employees of Chase. *See*

10  Vendler Dec. ¶ 3.

11     In addition, both Plaintiffs and Defendants served extensive document subpoenas and

12  records requests, including Freedom of Information Act ("FOIA") requests on third parties.

13     **C.    Mediation and Negotiations**

14     In February 2008, the parties first discussed settlement, and over the subsequent three

15  years, the Settling Parties have engaged in extensive settlement-oriented information

16  sharing and communications apart from the formal discovery that was also ongoing. The

17  Settling Parties participated in three formal mediation sessions before the Honorable

18  Edward A. Infante (Ret.) of JAMS. The first mediation session was held on May 6, 2010;

19  the second mediation session was held on June 10, 2010; and the third mediation session

20  was held on January 13, 2011. All of the mediations were conducted in San Francisco. At

21  all times, the settlement negotiations have been adversarial, non-collusive, and at arm's

22  length.

23

24

25  [5] Solely the notices of motion are referenced here by number. Each motion, of course,
26  ultimately became associated with multiple docket entries which have not been separately
    referenced here.
27

                                          4

1    Ultimately, the mediations and extended negotiations with Chase, and the Court's
2    order to show cause, produced a settlement in principle that formed the basis for the
3    Settlement Agreement that is now being presented for final approval. *See* Vendler Dec. ¶ 5.

4    **III.   KEY SETTLEMENT TERMS AND PROVISIONS FOR CLASS NOTICE**

5    The details of the settlement are contained in the Joint Stipulation of Partial Class
6    Action Settlement and Release filed on June 8, 2011. [Docket No. 324].[6] The following
7    summarizes the Settlement Agreement and its key terms.

8    **A.   The Settlement Fund**

9    Defendant Chase will pay $4.9 million ("Gross Settlement Amount") in full
10   settlement of the claims alleged against it.  Defendant Chase will pay this amount to the
11   Settlement Administrator's Escrow Account as specified in the parties Stipulation following
12   the Final Approval of this Agreement.

13   Once Defendant Chase has made its payment into the Settlement Escrow Account,
14   the Settlement Administrator will disburse the "Net Settlement Amount" to members of the
15   class who are Participating Claimants under the terms of this Agreement.  The "Net
16   Settlement Amount" will consist of the $4.9 million Gross Settlement Amount, plus post-
17   Judgment interest minus the sum of the amounts attributable to attorneys' fees, class notice
18   and administration costs, fees to Class Counsel, costs incurred by Class Counsel, and the
19   Chase Named Representatives' $5,000 enhancement payments.  The Net Settlement
20   Amount will then be divided by the Claims Administrator and be paid to each Class
21   Member who: (a) did not exclude themselves from (the "Settlement Class") and who
22   submits a timely Proof of Claim form.  Any individual who claims that they did not receive
23   a Class Notice or who claims that they did not timely receive a Class Notice, but who

24

25   [6] The Joint Stipulation of Partial Class Action Settlement and Release was attached as
26   Exhibit "A" to the Declaration of David J. Vendler which was filed in conjunction with the
     preliminary approval motion.
27

5

claims that he or she should be a Class Member, must present evidence and information demonstrating that he or she should be included in the settlement to the Class Administrator, whose decision shall be final.

**B.    Notice to Class**

Filed concurrently with this Petition for Final Approval is a Declaration by Trisha Solorzano ("Solorzano Dec.") of Gilardi & Co., the Claims Administrator. The Solorzano Dec. contains detailed information regarding the notice and claims administration process, the expected cost of the administration of the settlement, as well the number of claimants who have submitted claim forms and the expected payout for participant.

Gilardi & Co. was retained by Chase to serve as the Claims Administrator in connection with the Chase settlement. (Solorzano Dec. ¶ 3.) As Claims Administrator, Gilardi & Co. has implemented the terms of the Chase Settlement, by, among other things: (i) distributing the Class Notice (the "Notice") in accordance with the terms of the Joint Stipulation of Settlement; (ii) maintaining a toll-free hotline, posting case-specific documents on the settlement website, and updating each accordingly during the course of the administration; and (iii) receiving and processing Claims Forms and Opt-Outs. *Id.* Copies of the Summary Notice and the Claim Form are attached to the Solorzano Declaration as Exhibits "A" and "B." *Id.* at ¶ 4.

Starting on August 10, 2011, in accordance with the terms of the Joint Stipulation of Settlement, Gilardi & Co. caused the Summary Notice to be disseminated via email ("email notice") to the Settlement Class Members former DW CCA customers for whom email addresses were provided either by Chase or by Class Counsel (as obtained by them from Ballenger in the *Polacsek* case) and by regular mail to the rest. (Solorzano Dec. ¶ 5.) Of the total of 289,647 email addresses, 172,544 were returned as undeliverable (aka "bouncebacks"). *Id.* Each email notice contained a hyperlink to the settlement website

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS WITH CHASE BANK USA, N.A.**                                    SACV 07-1476 CJC (ANx)

1  (www.AbatSettlementClass.com), and advised Class Members that additional information
2  and relevant documents would be found on the site. *Id.*

3  To those former customers whose email notice was returned as undeliverable, and to
4  those former customers for whom no email address was known, Gilardi & Co. mailed a
5  hard copy of the Summary Notice. *Id.* at ¶ 5. Prior to the mailing, Gilardi & Co. conducted
6  a National Change of Address ("NCOA") search to ascertain and update each Class
7  Member's address. *Id.* On August 10, 2011, Gilardi & Co. caused the Summary Notice to
8  be mailed to the Settlement Class Members former DW CCA customers. *Id.*

9  Class Notices returned to Gilardi & Co. by the United States Postal Service ("USPS")
10  with a forwarding address were re-mailed to the updated address until the Notice Response
11  Deadline. *Id.* at ¶6. A total of 1,456 Class Notices were returned by USPS with a
12  forwarding addresses and thereafter re-mailed. Class Notices returned on or before October
13  25, 2011 by USPS without a forwarding address were subject to a third party locator
14  service. Based on the third party locator service search, 63,795 Class Notices were
15  re-mailed to updated addresses. The parties' Settlement Stipulation provides that where no
16  updated address can be obtained following the return of a Notice to Gilardi & Co., that
17  Class Member is to be considered a Non-Settlement Class Member.

18  In addition, Gilardi & Co. mailed copies of the Long Form Notice and to Class
19  Members when requested. (*Id.* at ¶8.) A copy of the full Notice is attached to the
20  Solorzano Declaration as Exhibit "C." *Id.*

21  Beginning on August 10, 2011, Gilardi & Co. set up and continues to maintain an
22  automated toll-free telephone number where Class Members can obtain information about
23  the settlement. *Id.* at ¶ 8. This toll-free help line is accessible 24 hours a day, 7 days a
24  week. Claimants who call the toll-free number have the option of leaving a voice message
25  so that a call center representative can return the call, or requesting a Class Notice be mailed

26
27                                                     7
28  **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL**          SACV 07-1476 CJC (ANx)
    **APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS**
    **WITH CHASE BANK USA, N.A.**

1  to them.  As of October 25, 2011, there have been 21,946 calls to the automated number.

2  All of the voice messages have been returned promptly.  *Id.*

3  Gilardi & Co. established and is maintaining a website dedicated to this settlement

4  (www.AbatSettlementClass.com) to provide additional information to the Class Members

5  and to answer frequently asked questions.  *Id.* at ¶¶ 6 and 7.  Users of the website can

6  download a copy of the Long Form Notice, Change of Address Form, the Stipulation, and

7  the Preliminary Approval Order, among other relevant documents.  The web address was

8  set forth in the Summary Notice (hard copy and email format), as well as in the Long Form

9  Notice.   The settlement website became operational on September 2, 2011, and is

10  accessible 24 hours a day, 7 days a week. As of October 21, 2011, the website had received

11  46,011 visits.  *Id.* at ¶ 7.

12  **C.   Claims Administration**

13  Exclusions:  Class Members who elected to "opt out" and thus exclude themselves

14  from the Settlement Class were required per the Settlement Stipulation to execute and

15  timely mail a statement in writing clearly indicating that intent, on or before October 10,

16  2011, which was the Notice Response Deadline.  Gilardi & Co. received 36 requests for

17  exclusion postmarked on or before the October 10, 2011 Notice Response Deadline.  *Id.* at

18  ¶ 13.

19  Objections: Class Members who wanted to object to the Stipulation were required by

20  the Settlement Stipulation to file a written objection with the Court, with copies to Class

21  Counsel, Chase's counsel and Gilardi & Co. no later than the Notice Response Deadline of

22  October 10, 2011 *Id.* at ¶ 14.)  Gilardi & Co. and counsel have not received any objections

23  to the Settlement.  *Id.* at ¶ 14.

24  Statistics: Counsel received regular reports of the work Gilardi & Co. performed with

25  respect to the administration of the Stipulation.

26

27                                                          8

28  **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL**          SACV 07-1476 CJC (ANx)
    **APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS**
    **WITH CHASE BANK USA, N.A.**

IV.   **LEGAL STANDARD**

Procedurally, the approval of a class action settlement takes place in two stages. The court preliminarily reviews the settlement for fairness and if it approves of the settlement, the Court will temporarily certify the class if it satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b). The court will then authorize notice to be given to the class. Fed. Judicial Ctr., Manual for Complex Litigation, § 21.633 (4th Ed. 2004); *see also Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 658-59 (E.D. Cal. 2008).

At the second stage, the court holds a fairness hearing (also known as a "final approval" hearing) after notice is given to putative class members, where the court will entertain any class objections to (1) the treatment of this litigation as a class action and/or (2) the terms of the settlement. *See Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989). Following the fairness hearing, the court will make a final determination as to whether the parties should be allowed to settle the class action pursuant to the terms agreed upon. *Nat'l Rural Telecoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

A.   **Settlements That Are Fair, Adequate, and Reasonable Warrant Approval by the Court**

Federal Rule of Civil Procedure 23(e) requires court approval of a settlement of the claims of a certified class. Under Rule 23, a court should approve a settlement if the settlement is fair, reasonable, and adequate. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).

In determining the fairness of a proposed settlement, the Court is guided by the following factors identified by the Ninth Circuit in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998):

> Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense,

9

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL          SACV 07-1476 CJC (ANx)
APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS
WITH CHASE BANK USA, N.A.

complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.  To survive appellate review, the district court must show it has explored comprehensively all factors (citations omitted).

"The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983).

While district courts have broad discretion in evaluating proposed settlements, *Class Plaintiffs*, 955 F.2d at 1291-92; *Officers for Justice*, 688 F.2d at 625, a court should approve a settlement unless the settlement, "taken as a whole, is so unfair on its face as to preclude judicial approval." *Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658, 667 (S.D.N.Y. 1977) (citations omitted).  The issue is not whether the settlement could have been better, but whether it is fair, reasonable, adequate, and free from collusion. *Hanlon*, 150 F.3d at 1027; *see also In re United Energy Corp. Solar Power Modules Tax Shelter Investors Securities Litigation*, 122 F.R.D. 251, 257 (C.D. Cal. 1988).

Moreover, in considering the adequacy of a proposed settlement, the goal of settlement is to avoid the determination of contested issues; thus "the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits." *Officers for Justice*, 688 F.2d at 625; *accord Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 617 (N.D. Cal. 1979).  As explained by the Ninth Circuit in *Officers for Justice*, 688 F.2d at 625:

[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned. . . . The proposed settlement is not to be judged against a hypothetical or speculative measure of

10

1   what might have been achieved by the negotiators (citations omitted and emphasis in original).

2   The trial court is also entitled to rely upon the judgment of experienced counsel for the

3   parties. *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 538-39 (S.D. Fla. 1988),

4   aff'd, 899 F.2d 21 (11th Cir. 1990).  Indeed, where as here, the counsel recommending

5   approval of the settlement are known to the Court as competent and experienced, significant

6   weight may be given to their opinion. *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D.

7   Cal. 1988), disapproved on other grounds by *Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th

8   Cir. 1989).

9   **B.    The Law Favors Prompt Resolution of Class Action Claims**

10   "[A]pproval of class action settlements will be generally left to the sound discretion

11   of the trial judge." *Wellman v. Dickinson*, 497 F. Supp. 824, 830 (S.D.N.Y. 1980) (citations

12   omitted).  The Court must "be mindful of the Ninth Circuit's policy favoring settlement,

13   particularly in class action law suits." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036,

14   1041 (N.D. Cal. 2008); see also *Officers for Justice*, 688 F.2d at 625 ("it must not be

15   overlooked that voluntary conciliation and settlement are the preferred means of dispute

16   resolution.  This is especially true in complex class action litigation . . . .").  As the Ninth

17   Circuit set forth in *Class Plaintiffs*, 955 F.2d at 1276:

18   We are not permitted to 'substitute our notions of fairness for those of
      the district judge and the parties to the agreement.'  This is especially
19   true in light of the strong judicial policy that favors settlements,
      particularly where complex class action litigation is concerned
20   (citations omitted).

21   Multiple cases have held that the complexity, expense, and duration of litigation is a factor

22   in approval of a settlement. *See Hanlon*, 150 F.3d at 1026; *In re Cendant Corp. Litig.*, 264

23   F.3d 201, 231, 233 (3rd Cir. 2001) ("the complexity, expense, and likely duration of the

24   litigation" is one of nine factors in determining the fairness of settlement); *D'Amato v.*

25   *Deutsche Bank*, 236 F.3d 78, 86 (2nd Cir. 2001) (same nine factors).

26

27                                                11

## V. ANALYSIS: THE SETTLEMENT SATISFIES THE STANDARDS FOR JUDICIAL APPROVAL

### A. The Settlement Resulted from Arm's Length Negotiations and the Experience and Views of Counsel Favor Settlement

The Court should begin its analysis with a presumption that the Settlement is fair and should be approved:

> [A] presumption of fairness exists where: (1) the settlement is reached through arms-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small.

*Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1802 (1996); *see also 7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1146 (2000); *accord Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), aff'd, 661 F.2d 939 (9th Cir. 1981); see also *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989).

Here, all four factors are present. First, the Settlement was reached only after arms-length, good faith negotiations and only with the assistance of an experienced mediator and protracted further negotiations after the third mediation session. See Vendler Dec. ¶ 5. As such, there is an absence of any indicia of collusion. Co-Lead Plaintiff's Counsel, Niall P. McCarthy, Anne Marie Murphy, David J. Vendler, Gregory Duncan and Garrett M. Smith negotiated the Settlement in vigorous and intense negotiations, including participating in multiple mediations with a highly experienced mediator, Hon. Edward Infante, Retired. The parties reached settlement after contentious negotiations, spread over several months, and the formal and informal exchange of significant amounts of relevant information and data. Second, the parties engaged in a substantial exchange of relevant data in advance of the mediation. As a result of these efforts, the parties had sufficient information to evaluate the strengths and weaknesses of the Plaintiffs' claims and defenses,

12

1   whether to pursue litigation or settle, and the appropriate settlement value for the claims at
2   issue.   Additionally, the Settlement Class Representatives have actively monitored the
3   progress of this litigation to see that their injuries, as shared with the proposed Settlement
4   Class, are sufficiently remedied.   The Chase Class Representatives have no interests
5   antagonistic to the proposed Settlement Class.  See Vendler Dec. ¶ 6.

6        Third, the significant settlement obtained for the Settlement Class is concrete
7   evidence that the Representative Plaintiffs and their counsel have been acting vigorously to
8   fairly and adequately represent the Settlement Class's interests as a whole.   Both Class
9   Counsel and counsel for Defendant Chase are experienced in consumer protection
10  class-action litigation and other complex litigation, acted in good faith, and have
11  represented their clients' best interests in reaching the Settlement.  See Vendler Dec. ¶ 7.
12  (In addition to their extensive general litigation experience, Class Counsel have taken a
13  leading role nationally in litigating claims arising under the Credit Repair Organizations Act
14  against CCAs. See, e.g., *Zimmerman v. Cambridge Credit Counseling Corp.*, 409 F.3d 473
15  (1st Cir. 2005); *Zimmerman v. Cambridge Credit Counseling Corp.*, 409 F.3d 473 (1st Cir.
16  2005), remanded to 529 F. Supp, 2d 254 (D. Mass. 2008); *Polacsek v. Debticated*
17  *Consumer Counseling*, 413 F. Supp 2d 539 (D. Md. 2005).  After careful and thorough
18  consideration, experienced Plaintiffs' counsel have concluded that the Settlement is fair,
19  adequate, and reasonable and in the best interests of the Class as a whole.

20              "'Great weight' is accorded to the recommendation of counsel, who are
                most closely acquainted with the facts of the underlying litigation."
21              This is because "parties represented by competent counsel are better
                positioned than courts to produce a settlement that fairly reflects each
22              party's expected outcome in the litigation."   Thus, "the trial judge,
                absent fraud, collusion, or the like, should be hesitant to substitute its
23              own judgment for that of counsel."

24  *Nat'l Rural Telecomms. Coop. v. Direct-TV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)
25  (citations omitted); *see also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
26  MDL Docket No. 901, 1992 U.S. Dist. LEXIS 14337, at *8 (C.D. Cal. June 10, 1992)

27                                              13

28  **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL**          SACV 07-1476 CJC (ANx)
    **APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS**
    **WITH CHASE BANK USA, N.A.**

1  (finding belief of counsel that proposed settlement represented most beneficial result for

2  class compelling factor in approving settlement).

3         Fourth, no objections have been received to the proposed settlement even though

4  literally hundreds of thousands of notices were sent out. *Nat'l Rural, supra*, at 221 F.R.D.

5  529 ("It is established that the absence of a large number of objectors to a proposed class

6  action settlement raises a strong presumption that the terms of a proposed class settlement

7  action are favorable to the class members." .

8      **B.**   **The Strength of the Plaintiffs' Cases Is Well-Supported**

9         While the Settling Parties believe, respectively, that their claims are and would

10  ultimately result in a favorable verdict, litigation is never free from risk and uncertainty and

11  success cannot be assured. See *In re Aremis Soft Corp. Sec. Litig.*, 210 F.R.D. 109, 125

12  (D.N.J. 2002) ("Regardless of the strength of case counsel might present at trial, victory in

13  litigation is never guaranteed."). Here, a trial and inevitable post-trial appeals would entail

14  substantial time and significant expense for both sides. In light of the substantial amount of

15  time already devoted to this action over the past nearly four years, continued litigation

16  would only delay recovery further. See Vendler Dec. ¶ 8. Class Counsel also could not

17  overlook in negotiating with Chase, the existence of this Court's order to show cause as to

18  why summary judgment should not be granted in Chase's favor. [Docket 292]. Finally,

19  given the fact that the Settlement Class is composed primarily of financially distressed

20  consumers, the proposed settlement provides a benefit that would otherwise be unavailable.

21  *See In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1338 (N.D. Ga.

22  2000).

23         In consideration of the relative strengths and weaknesses of the legal claims and

24  defenses asserted, the serious issues and disputes remaining among the parties, and the time

25  and expense necessary to prosecute this case, the Settling Parties and their counsel believe

26

27  14

28  **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL**      SACV 07-1476 CJC (ANx)
   **APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS**
   **WITH CHASE BANK USA, N.A.**

1   that the proposed settlement is fair, adequate and reasonable and respectfully submit that the

2   partial settlement warrants final approval.

3   **C.    Settlement is Appropriate in Light of the Risks Involved and the**

4        **Results Achieved**

5   This action has been pending since late 2007.  Absent settlement, full resolution of

6   this action would likely still be many months away, and would require significant

7   expenditure of resources by counsel, close and time-consuming management by the Court,

8   further discovery, substantial motion practice, a lengthy trial or trials, and, potentially,

9   appeals.  Plaintiffs and Class Members have already been waiting for years for resolution of

10  their claims, and would likely be waiting for several more without this settlement.

11  For the foregoing reasons, the expense, complexity, and duration of further litigation

12  favor final approval of this settlement.

13  **D.    Maintaining Class Certification**

14  In Plaintiffs' view, class certification is appropriate in this case and would likely

15  maintain its status throughout trial.  Furthermore, Chase has not challenged the Court's

16  certification of this matter as a class under Rule 23.  *See Nat'l Rural Telecoms. Coop.*, 221

17  F.R.D. 523, 525 (C.D. Cal. 2004).

18  "To qualify for certification under Rule 23(b)(3), a class must meet two requirements

19  beyond the Rule 23(a) prerequisites:  "Common questions must 'predominate over any

20  questions affecting only individual members'; and class resolution must be 'superior to other

21  available methods for the fair and efficient adjudication of the controversy.'"  *Amchem*

22  *Prods., Inc. v. Windsor*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)(3)).

23        In adding 'predominance' and 'superiority' to the
          qualification-for-certification list, the Advisory Committee sought to
24        cover cases 'in which a class action would achieve economies of time,
          effort, and expense, and promote . . . uniformity of decision as to
25        persons similarly situated, without sacrificing procedural fairness or
          bringing about other undesirable results.'

26

27                                        15

28  PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL        SACV 07-1476 CJC (ANx)
    APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS
    WITH CHASE BANK USA, N.A.

1   *Amchem*, 521 U.S. at 615 (quoting Advisory Committee's Notes on Fed. Rules Civ. Proc.

2   23, 28 U.S.C. App., pp. 696-697 [sic]). While this test has been held to be more demanding

3   than 23(a)'s simple commonality requirement, its thrust is equally pragmatic:  "[T]he

4   Advisory Committee had dominantly in mind vindication of 'the rights of groups of people

5   who individually would be without effective strength to bring their opponents into court at

6   all.'" *Amchem*, 521 U.S. at 617 (internal citations omitted).

### 1.   Common Questions of Law and Fact Predominate

8   Rule 23(b)(3) does not require that all members of the class be identically situated[.]"

9   *Kristianson v. John Mullins & Sons, Inc.*, 59 F.R.D. 99, 106 (E.D.N.Y. 1973) (holding that

10  Plaintiff met requirements for class action suit).  The predominance prong calls for class

11  "'cohesion [such that] prosecution of the action through representatives would be quite

12  unobjectionable[.]'"  *Amchem*, 521 U.S. at 616 (internal citations omitted).

13  Here, the proposed settlement class is defined by common factual predicates that

14  eliminate divergences.  The proposed settlement class consists entirely of former or current

15  DW CCA consumers similarly injured by the fraudulent representations made to them in

16  connection with the purchase of credit repair services and which was at least the indirect

17  result of acts, practices and courses of business of Chase in supporting the DW CCAs both

18  financially and with the product they were selling.

19  All members of the proposed Settlement Class share common questions of fact and

20  law, including most specifically: (1) whether DebtWorks and/or the DW CCAs were credit

21  repair organizations;[7] (2) whether DebtWorks and/or the DW CCAs committed fraudulent

22  acts in the sale of credit repair services; and (3) whether any of Chase's acts, practices

23  and/or courses of business directly or indirectly resulted in the fraud that DebtWorks and

24  the DW CCAs practiced against class members in selling them credit repair services.  These

---

[7] DebtWorks was already found on summary judgment to be a credit repair organization in the *Polacsek* case.

16

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS
WITH CHASE BANK USA, N.A.                                   SACV 07-1476 CJC (ANx)

1   non-exhaustive issues revolve around the DebtWorks and the DW CCAs consistent

2   business practices and Chase's consistent support of those practices; they do not

3   determinatively rely on class members' individual experiences.   For this reason, "[a]

4   common inquiry . . . is the most efficient and appropriate way to answer these questions."

5   *Wang v. Chinese Daily News*, 231 F.R.D. 602, 613 (C.D. Cal. 2005) (finding class

6   certification appropriate where questions of law and fact revolved around Defendant's

7   conduct); *see also, Gunnells v. Healthplan Services*, 348 F.3d 417, 428 (4th Cir. 2003)

8   ("[I]f 'common questions predominate over individual questions as to liability, courts

9   generally find the predominance standard of Rule 23(b)(3) to be satisfied.'" (internal

10   citations omitted)).

11          Indeed, the only real difference between Class Members is the amounts they paid to

12   the DebtWorks CCAs which is "invariably an individual question and does not defeat class

13   action treatment."   *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) (holding that

14   conditional certification was appropriate where damage amounts varied amongst proposed

15   class members).   Given that the business practices and operations that form the focal point

16   in the claim against Chase are uniform, common questions of law and fact necessarily

17   predominate and warrant class treatment.   *See, e.g., Harris v. Palm Springs Alpine Estates,*

18   *Inc.*, 329 F.2d 909, 914 (9th Cir. 1964) (holding that Defendant's common course of

19   conduct could legitimize class action standing: "since the complaint alleges a common

20   course of conduct over the entire period, directed against all investors, generally relied

21   upon, and violating common statutory provisions, it sufficiently appears that the questions

22   common to all investors will be relatively substantial."); *Fischer v. Kletz*, 41 F.R.D. 377,

23   381-82 (9th Cir. 1966) (common reliance on Defendant's misrepresentations contributed to

24   propriety of class action suit).

25

26

27                                                          17

28   **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL**                    SACV 07-1476 CJC (ANx)
     **APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS**
     **WITH CHASE BANK USA, N.A.**

## 2.   Class Treatment is Superior

There can be no question that class resolution is convenient, desirable and superior in this case. *See Amchem*, 521 U.S. at 615 ("Rule 23(b)(3) permits certification where class suit 'may ... be convenient and desirable.'" (internal citations omitted)).   Rule 23(b)(3) incorporates a non-exhaustive list of factors to consider when determining a class action's "superiority":

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3). The Supreme Court has emphasized individual accessibility to the judiciary when evaluating 23(b)(3)'s superiority requirement: "'The interest [in individual control] can be high where the stake of each member bulks large and his will and ability to take care of himself are strong; the interest may be no more than theoretic where the individual stake is so small as to make a separate action impracticable.'" *Amchem*, 521 U.S. at 616 (internal citations omitted); *see also Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) ("When common issues present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than an individual basis." (emphasis added) (internal citations omitted)).   "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem[.]" *Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

18

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS
WITH CHASE BANK USA, N.A.

SACV 07-1476 CJC (ANx)

1        Here, the claims involved indicate that most Class Members are not even aware that

2    they have suffered a wrong at the hands of Chase. Even if all Class Members had

3    knowledge of their claims, the individual claims are small and their owners are, by the very

4    nature of the debts giving rise to their claims, unable to finance this litigation. Nor would

5    they have any substantial interest in controlling it. The alternative to a class action would

6    be for thousands of plaintiffs to file individual lawsuits against Chase, bringing essentially

7    the same claim based on the same evidence. This would needlessly exhaust judicial

8    resources. Class treatment will superiorly expedite resolution as to Defendants' liability and

9    avoid duplicative efforts.

10       Were this litigation to persist, numerous potential claims from individuals would

11   severely limit a fair, reasonable, and adequate settlement of any particular claim. The

12   inherent convenience and superiority of class certification, therefore, supports final

13   approval of this settlement.

14       **E.**    **Amount of Settlement and Benefits to the Class**

15       Here, there is no question that the proposed settlement is at least "within the range of

16   possible approval." Only after extended settlement-oriented information sharing, spread

17   over the course of three years and culminating in three formal mediation sessions, were the

18   Settling Parties able to reach an agreement as to relief for the proposed class. See *S.C. Nat'l*

19   *Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) ("giv[ing] significant weight to the

20   judgment of class counsel" where settlement negotiations were found to be "hard fought

21   and always adversarial" and there was "no indication of any collusion"). The settlement

22   offers substantial benefits for the intended beneficiaries, creating a settlement fund of $4.9

23   million dollars ($4,900,000.00) and eliminating the risk that the Settlement Class, after

24   years of additional litigation, might not recover anything from Defendant Chase, or might

25   recover an amount less than the settlement funds obtained. See Vendler Dec. ¶ 9. When

26

27

28

19

---

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL**        SACV 07-1476 CJC (ANx)
**APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS**
**WITH CHASE BANK USA, N.A.**

comparing the potential costs and benefits of consummating the Settlement versus continuing litigation, courts may look to a number of factors.  These factors include:

> (1) the strength of the plaintiffs' case compared against the amount offered in settlement; (2) the likely complexity of trial; (3) the length and expense of litigation; (4) the amount of opposition to settlement among affected parties; (5) the opinion of competent counsel; and (6) the stage of the proceedings and the amount of discovery completed at the time of settlement.

*Misra v. Decision One Mortgage Company and HSBC Finance Company*, 2009 U.S. Dist. LEXIS 119468 at *8-9 (C.D. Cal. April 13, 2009); *see also In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1338 (N.D. Ga. 2000).  The settlement amount therefore supports final approval.

## F.   The Extent of Discovery Completed and the Well Developed Record Favor Final Approval of the Settlement

Prior to settlement, the parties must have engaged "in sufficient investigation of the facts to enable the court to intelligibly make an appraisal." *Polar Int'l Brokerage Corp. v. Reese*, 187 F.R.D. 110, 114 (S.D.N.Y. 1999) (internal quotations omitted).  As detailed above, prior to reaching the proposed settlement, the parties exchanged significant amounts of information, including hundreds of thousands of pages of relevant documents, (including voluminous ESI-related discovery).  The parties also took twelve (12) depositions, and Plaintiffs' counsel interviewed scores of class members.  Based on this factual investigation, and their vast collective experience in consumer protection class actions, counsel for Plaintiffs were well prepared to negotiate and enter into the Settlement.  See Vendler Dec. ¶ 10.

## G.   The Experience and Views of Counsel Favor Final Approval

Plaintiffs' counsel are experienced in this area of the law.  Indeed, in the particular area of the CROA, Class Counsel are among the most experienced counsel in the nation. Class Counsel are fully familiar with the facts and law applicable to this Action and are well

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS WITH CHASE BANK USA, N.A.

SACV 07-1476 CJC (ANx)

acquainted with the prosecution of class actions, generally, and with class-based consumer protection law claims. Class Counsel provided fair and vigorous representation for the Class, and have regularly been deemed to be adequate class counsel. See Vendler Dec. ¶ 11.

The settlement negotiations were hard fought, and involved many contested issues, including liability and damages. At all times during their negotiations, the Settling Parties zealously advocated their respective positions. The Settling Parties were clearly informed of the strengths and weaknesses of Plaintiff's claims, both factually and legally, and were able to use this knowledge to engage in a complex negotiation process. Given the uncertainties, risks and significant expense of continued litigation, both parties decided that settling the claim against Defendant Chase based on the terms of the proposed settlement was in their best interests. See Vendler Dec. ¶ 12.

Co-Lead Class Counsel in this case are Cotchett, Pitre & McCarthy, LLP ("CP&M"), Morris Polich & Purdy LLP ("MPP"), Law Offices of Gregory Duncan ("Duncan"), Garrett M. Smith, PLLC ("Smith"), and Michie Hamlett Lowry Rasmussen & Tweel PLLC ("MHLRT"). Courts around the country have found that all of these firms possess the skill, experience, and qualifications necessary to conduct class action litigation similar to this case. Furthermore, as noted above, Class Counsel have taken a leading role nationally in litigating claims arising under the Credit Repair Organizations Act and similar to this Action. See, e.g., *Zimmerman v. Cambridge Credit Counseling Corp.*, 409 F.3d 473 (1st Cir. 2005); *Zimmerman v. Cambridge Credit Counseling Corp.*, 409 F.3d 473(1st Cir. 2005), remanded to 529 F. Supp, 2d 254 (D. Mass. 2008); *Polacsek v. Debticated Consumer Counseling*, 413 F. Supp 2d 539 (D. Md. 2005). This factor also weighs in favor of final approval of the Settlement.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS WITH CHASE BANK USA, N.A.**   SACV 07-1476 CJC (ANx)

**H.    The Absence of Opposition to the Settlement Supports Final Approval**

The absence of any objections to the Settlement further supports final approval. Although Gilardi & Co., the class administrator, has cumulatively mailed and emailed Notices to more than 250,000 class members, not a single objection was filed. Solorzano Dec., ¶ 14. The overwhelmingly favorable response by the Class strongly supports final approval of the Settlement. *Nat'l Rural*, *supra*, at 529; *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1313 n. 15 (3d Cir. 1993); *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1338 (N.D. Ga. 2000) (concluding that the lack of objections is a further factor weighing in favor of approval of settlement).

**VI.    CONCLUSION**

As set forth above, the proposed settlement is reasonable, adequate, and fair to all class members. There was a very favorable response rate from the tens of thousands of class members who opted in to the settlement, only a very few opt outs, and no objections whatsoever. Accordingly, Plaintiffs respectfully request that the Court GRANT final approval of the Joint Stipulation of Class Action Settlement and release, and enter the proposed Order and Judgment filed herewith.

Dated: October 28, 2011                    Respectfully submitted,


By:    */s/ David J. Vendler*

NIALL P. MCCARTHY
ANNE MARIE MURPHY
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:   (650) 697-6000
Facsimile:   (650) 692-3606

DAVID J. VENDLER, ESQ.
**MORRIS POLICH & PURDY** LLP
1055 West Seventh Street, 24th Floor
Los Angeles, CA 90017

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL                    SACV 07-1476 CJC (ANx)
APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS
WITH CHASE BANK USA, N.A.

1

Telephone:  (213) 891-9100
Facsimile:   (213) 488-1178

2

GREGORY S. DUNCAN, ESQ.

3

**LAW OFFICES OF GREGORY S. DUNCAN**
412 East Jefferson Street
Charlottesville, VA 22902

4

Telephone:  (434) 979-8556
Facsimile:   (434) 979-9766

5

*(Admitted Pro Hac Vice)*

6

GARRETT M. SMITH

**GARRETT M. SMITH, PLLC**

7

100 Court Square, Suite A
Charlottesville, VA 22902

8

Telephone: (434) 293-4444
Facsimile: (434) 293-7914

9

*(Admitted Pro Hac Vice)*

10

GARY W. KENDALL, ESQ.

**MICHIE HAMLETT LOWRY**

11

**RASMUSSEN & TWEEL PLLC**
500 Court Square, Suite 300

12

Charlottesville, VA 22902
Telephone:  (434) 951-7200

13

Facsimile:   (434) 951-7218
*(Admitted Pro Hac Vice)*

14

15

*Attorneys for Plaintiffs*

16

17

18

19

20

21

22

23

24

25

26

27

28

23

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL**                    SACV 07-1476 CJC (ANx)
**APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS**
**WITH CHASE BANK USA, N.A.**

## PROOF OF SERVICE

*Abat, et al. v. JP Morgan Chase & Co., et al.*
USDC, Central District of California, Case No. SACV 07-1476 CJC (ANx)

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) years and am not a party to the within action.

On October 28, 2011, pursuant to the Court's Electronic Filing System, I submitted an electronic version of the following document(s) via file transfer protocol to ECF (Electronic Case Filing)

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PARTIAL SETTLEMENT OF CLASS CLAIMS WITH CHASE BANK USA, N.A.; MEMORANDUM OF POINTS AND AUTHORITIES**

and true copies of these documents were served electronically upon all counsel of record by the Court's CM/ECF System, or if such service is not authorized, by first class mail, in accordance with Rule 5 of the Federal Rules of Civil Procedure.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on October 28, 2011, at Los Angeles, California.

Mineeh P. Lapid

L0169080.DOC